# CADLE COMPANY *v.* DAVID D'ADDARIO, EXECUTOR (ESTATE OF F. FRANCIS D'ADDARIO), ET AL.
## (SC 16997)
## (SC 16998)

Sullivan, C. J., and Norcott, Palmer, Zarella and Caruso, Js.

Argued November 25, 2003—officially released April 13, 2004

*Gary S. Klein*, with whom was *Stephanie A. McLaughlin*, for the appellants in Docket No. SC 16997, appellees in Docket No. SC 16998 (defendants).

*Michael G. Albano*, for the appellee in Docket No. SC 16997, appellant in Docket No. SC 16998 (plaintiff).

*Opinion*

SULLIVAN, C. J. The plaintiff, Cadle Company, is an unsecured creditor of the estate of F. Francis D'Addario (decedent). The decedent was an entrepreneur with extensive real estate and business holdings. The defendants are the decedent's sons and the current coexecutors of the estate, David D'Addario and Lawrence D'Addario. The plaintiff filed a motion for order in the Probate Court seeking both the removal of the coexecu-

tors and an accounting and liquidation of the estate. The Probate Court denied the motion for order and the plaintiff appealed to the trial court. The trial court dismissed the appeal sua sponte at the conclusion of the plaintiff's case-in-chief. This appeal followed.[1]

On appeal, the plaintiff claims that the court improperly: (1) failed to shift the burden of proof to the defendants to show that they acted fairly with regard to the transactions once the court had determined that a fiduciary relationship existed; (2) determined that the plaintiff had not established a prima facie case; and (3) failed to view the evidence in a light most favorable to the plaintiff. The defendants also appealed, claiming that the court improperly denied their motion for summary judgment, which was made prior to the trial, on the ground that the plaintiff lacked standing to bring the motion for order in the Probate Court. We dismiss the defendants' appeal for lack of subject matter jurisdiction. We consider the issue raised by the defendants, however, as an alternate ground to affirm the trial court's judgment. With respect to the plaintiff's appeal, we affirm the trial court's judgment of dismissal.

I

We first address the defendants' appeal challenging the plaintiff's standing to bring the motion for order in the Probate Court. As a preliminary matter, we note that the defendants were not aggrieved by the judgment of the trial court, which was rendered in their favor. "Ordinarily, a party that prevails in the trial court is not aggrieved." *Seymour* v. *Seymour*, 262 Conn. 107, 110–11, 809 A.2d 1114 (2002). Because aggrievement is a prerequisite to this court's subject matter jurisdiction;

---

[1] Both the plaintiff and the defendants appealed to the Appellate Court and the matter was transferred to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

General Statutes § 52-263;[2] Practice Book § 61-1;[3] *Seymour* v. *Seymour*, supra, 110–11; we dismiss the defendants' appeal for lack of subject matter jurisdiction. Despite our dismissal of the defendants' appeal, however, we consider the issue raised by the defendants as an alternate ground to affirm the judgment in the plaintiff's appeal.

"Ordinarily, we would consider the defendant's alternate grounds for affirmance only after finding merit in at least one of the claims raised on appeal. [O]nce the question of lack of jurisdiction of a court is raised, [however, it] must be disposed of no matter in what form it is presented . . . and the court must fully resolve it before proceeding further with the case." (Internal quotation marks omitted.) *Dow & Condon, Inc.* v. *Brookfield Development Corp.*, 266 Conn. 572, 578–79, 833 A.2d 908 (2003). Here, as in *Dow & Condon, Inc.*, we consider as a preliminary matter whether the plaintiff had standing to bring this action.

The following facts and procedural history are relevant to our resolution of this issue. The decedent gave the Bank of New Haven (bank) a demand note in the amount of $1 million on May 31, 1985. After the decedent's death, the defendants published a notice in local newspapers announcing September 11, 1986, as the bar date for creditors' claims. On July 30, 1986, the bank sent the estate's attorney a letter demanding payment

---

[2] General Statutes § 52-263 provides in relevant part: "Upon the trial of all matters of fact in any cause or action in the Superior Court, whether to the court or jury, or before any judge thereof when the jurisdiction of any action or proceeding is vested in him, if either party is aggrieved by the decision of the court or judge upon any question or questions of law arising in the trial . . . he may appeal to the court having jurisdiction from the final judgment of the court or of such judge . . . ."

[3] Practice Book § 61-1 provides: "An aggrieved party may appeal from a final judgment, except as otherwise provided by law."

on the note.[4] The estate's attorney twice replied to the bank's letter, seeking further information about the debt, but the bank did not respond. The bank sold the note to the plaintiff on September 23, 1994. The plaintiff subsequently filed a motion for order in the Probate Court for the removal of the executors and an accounting of the estate. The defendants then filed a motion to dismiss contesting the plaintiff's standing to participate in the estate.

The Probate Court denied both the defendants' motion to dismiss and the plaintiff's motion for order and the plaintiff appealed to the Superior Court. The defendants filed a motion for summary judgment, again contesting the plaintiff's standing.[5] The defendants argued that the plaintiff had no standing because the plaintiff's assignor, the bank, had not filed a proper claim with the estate pursuant to General Statutes §§ 45a-391[6] and 45a-395.[7]

---

[4] The relevant portions of the letter state: "Confirming our telephone conversation, please take this as notice to the executors, under the applicable rules and statutes, of claims against the estate of Francis D'Addario on behalf of the Bank of New Haven whom we represent. The claims are as follows:

"(1) $1 million dollar note dated May 31, 1985, payable on demand, signed by Francis D'Addario. . . . All of the above figures are original amounts of the notes and the current balances are less. Since they are all demand notes, demand is hereby made for payment on each note."

[5] In response to the defendants' motion for summary judgment, the plaintiff filed its own motion for summary judgment alleging that it had standing and was aggrieved. The proper procedural vehicle for disputing a party's standing is a motion to dismiss. *St. George* v. *Gordon*, 264 Conn. 538, 544–45, 825 A.2d 90 (2003). Therefore, we treat the parties' cross motions for summary judgment as a motion to dismiss and an objection to the motion to dismiss. We consider the trial court's action as the denial of a motion to dismiss.

[6] General Statutes § 45a-391 provides: "All claims presented against the estate of any deceased person shall be in writing, and, if required by the fiduciary of the estate or by the Court of Probate, any such claim shall be sworn to by the party presenting it."

[7] General Statutes § 45a-395 provides in relevant part: "(a) The Court of Probate may order the citation of the creditors of the deceased whose estate is in settlement before it to bring in their claims against such estate within

The trial court determined that the estate had received the bank's letter prior to the bar date and that the letter was sufficient to meet the statutory notice requirements. The court also noted that the defendants: (1) had failed to disallow the claim during earlier proceedings; (2) repeatedly had listed the claim on the estate's return of claims; and (3) had received the benefits of a deduction based on the debt in the estate's federal estate tax return and its state succession tax return. Accordingly, the court denied the defendants' motion for summary judgment.[8] These appeals followed.

The defendants argue on appeal that (1) the bank's letter was not sufficient to give the estate notice of the claim before the bar date and (2) the defendants' actions after the bar date did not cure the improper notice of the claim. We disagree.

The trial court's subject matter jurisdiction is a matter of law and, therefore, our review is plenary. "If a party is found to lack standing, the court is without subject matter jurisdiction to determine the cause. . . . A determination regarding a trial court's subject matter jurisdiction is a question of law. When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omit-

---

such time, not more than twelve months nor less than three months, from the date of such order, as it limits, by publishing a notice to that effect in a newspaper having a circulation in the probate district in which such estate is in settlement and by such further notice as the court deems necessary.

"(b) If any creditor fails to exhibit his claim to the fiduciary or his attorney as directed in such order, within the time limited by such order, he shall be barred of his demand against such estate . . . ."

[8] The judge simultaneously granted the plaintiff's motion for summary judgment, which also concerned the issues of the plaintiff's standing and aggrievement. See footnote 5 of this opinion.

ted.) *Connecticut Coalition Against Millstone* v. *Rocque*, 267 Conn. 116, 127–28, 836 A.2d 414 (2003).

Section 45a-395 requires a decedent's creditors to give notice of their claims to the estate prior to a date set by the Probate Court. "The purpose of the statute is to enable the administrator to perform his duties by assuring that he is informed as to what claims there are which must be paid out of the estate and allowing him the opportunity to pass on them. . . . Its meaning is that if a creditor fails to present his claim within the time limited, and no extension of time is granted, that omission is an effectual bar to any further demand against the estate. . . . Thus, the statute imposes a condition precedent to the enforcement of a right of action, the nonfulfilment of which extinguishes the right of action, in contrast to a statute of limitation which merely bars the remedy and is to be pleaded as a special defense." (Citations omitted.) *State* v. *Goldfarb*, 160 Conn. 320, 325, 278 A.2d 818 (1971).

In *Roth* v. *Ravich*, 111 Conn. 649, 151 A. 179 (1930), this court considered the question of what constitutes proper statutory notice.[9] In *Roth*, a representative of an estate inquired by letter as to the nature of a claim. Id., 651. The claimant responded by handwritten answers to the estate's specific questions in the margin of the estate's letter. Id. The writing included: "the amount of the original mortgage note . . . the amount then due on the principal; the date of the note; rate of interest with the dates of payment thereof, and the dates to which the interest had been paid; the amount of principal instalments; [and] dates on which instalments were due . . . ." Id. This court concluded that the writing

---

[9] The statute in effect at the time, General Statutes (1918 Rev.) § 4983, as amended by chapter 52 of the 1919 Public Acts, provides in relevant part: "[I]f any creditor shall fail to exhibit his claim within such time as may be limited by such order, he shall be barred of his demand against such estate . . . ."

was sufficient to give the statutorily required notice. Id., 655. This court stated that "[t]he form of the writing is of little importance so long as it furnishes information to the executor of the extent of the demand and the character of the transaction out of which it grew." Id., 654.

The more recent case of *Schwarzschild* v. *Binsse*, 170 Conn. 212, 217, 365 A.2d 1195 (1976), further explained that "the purpose of the statute is to expedite the settlement of estates and is not to furnish a vehicle by which executors or administrators may refuse to apply the assets of an estate to the payment of debts." (Internal quotation marks omitted.)

We conclude that the bank's letter to the defendants was sufficient to give notice pursuant to § 45a-395. As the trial judge noted, the letter described both the amount of the note and its origin. Thus, the estate was aware of both "the extent of the demand and the character of the transaction out of which it grew." *Roth* v. *Ravich*, supra, 111 Conn. 654. We need not reach the defendants' remaining claim that their actions allegedly acknowledging the debt after the bar date should not have been considered by the court because, even in the absence of those actions, the writing received by the estate was sufficient to satisfy the statutory notice requirement.

The defendants argue, however, that § 45a-395 (e), which provides that "[t]he amount of a claim may not be increased after the time for the presentation of such claim has expired," implies that the exact amount of the claim must be known to the executors before the date set by the Probate Court. This argument lacks merit. The letter stated the principal amount of the debt, which under *Roth* was sufficient to satisfy statutory notice requirements because it apprised the coexecutors of the extent of the claim. Nothing in § 45a-391 or

§ 45a-395 prevents further details, including the exact amount of the claim, from being made available after the notice date. To hold otherwise would thwart the purpose of the statute, namely, expedient estate settlement, and would enable executors to avoid paying the decedent's debts. See *Schwarzschild* v. *Binsse*, supra, 170 Conn. 217.

The defendants also assert that the bank's failure to specify the amount of principal due at the time of the decedent's death, as well as the terms of the loan, was fatal to its attempt to give the required statutory notice. They argue that those specific pieces of information not only constitute sufficient notice, but are also necessary to meet the requirements of § 45a-395. We disagree.

As we have stated, the *Roth* case stands for the more general principle that the estate must be made aware of "the extent of the demand and the character of the transaction out of which it grew." *Roth* v. *Ravich*, supra, 111 Conn. 654. Thus, the plaintiff's assignor gave proper notice of its claim and the plaintiff had standing to bring its motion for order before the Probate Court. We need not reach the plaintiff's alternate grounds for affirming the trial court's ruling on the plaintiff's standing.[10] The trial court's ruling is affirmed.

II

We next turn to the plaintiff's appeal. We begin by addressing its claim that the trial court improperly placed on it the burden of proving that the defendants had breached their fiduciary duties. We disagree.

---

[10] The plaintiff presented two alternate grounds for affirmance: (1) the trial court did not have subject matter jurisdiction to consider the validity of the plaintiff's claim because that issue was not within the scope of the Probate Court's decision on the motion for order, from which the plaintiff had appealed; and (2) the defendants are barred by the doctrine of res judicata from contesting the validity of the claim because they did not appeal the Probate Court's ruling on their motion to dismiss.

The case was tried to the court on July 29 through August 1, 2002. At the trial, the plaintiff presented evidence concerning its claims of breach of fiduciary duty, mismanagement and waste of estate assets. The evidence related to purchases made by estate owned businesses, the retention of unprofitable estate businesses, the retention and sale of estate properties, and negotiations with the largest creditor of the estate, all of which the plaintiff claimed were improper.

Specifically, the plaintiff presented evidence that estate businesses had paid the life insurance premiums on Ann D'Addario, the widow of the decedent and a beneficiary of the estate. The estate was advised to insure the life of Ann D'Addario because she was such a large beneficiary of the estate and the insurance would ease the tax burden on the estate at the time of her death. Estate businesses also paid life insurance premiums for David D'Addario. The premiums were less than $15,000 per month. The proceeds of the life insurance were intended to benefit five irrevocable trusts set up by the decedent for the benefit of his children, including the defendants. The estate businesses were no longer making these payments at the time of the trial. The record does not show when they ceased, or which of the many estate owned businesses were paying the premiums.

Estate businesses also paid the lease for a luxury car for David D'Addario. This payment was part of his compensation for acting as chief executive officer of the estate's businesses. The payment was approximately $1100 to $1200 per month.

The plaintiff presented evidence that one of the estate's parcels of real property, the so-called Honey Spot Road Extension, was sold at a tax lien sale because the estate could not pay the property taxes, which David D'Addario estimated to exceed $1 million. The taxes due

were in fact much lower. The property was purchased at the public tax lien sale by social friends of Mary Lou D'Addario, the decedent's daughter. The third party then sold the property to Mary Lou D'Addario. After Mary Lou D'Addario took ownership of the property as a member of Honeyspot Ventures, LLC, she was joined in ownership by the defendants, David D'Addario and Lawrence D'Addario. Honeyspot Ventures, LLC, sold the property to Honeyspot Investors, LLP, which was formed by the same individuals who owned Pace Trucking, a neighboring company that had shown previous interest in the property. None of the profits from the sale of the land were taken into the estate because the property had been transferred from the estate at the tax sale. David D'Addario also testified that the property was contaminated, that the estate had disputed the value of the property with the Internal Revenue Service (IRS), and that the estate had made attempts to sell the property prior to its loss at the tax lien sale.

The plaintiff also presented evidence that the estate owned four condominiums, located in Florida, New York, Vermont and San Francisco, which were used by family members and for business purposes. All four properties were sold to family members between 1996 and 1997. Prior to their disposal, the estate paid real estate taxes and maintenance costs on the properties and received no rental income from them.

The plaintiff also presented evidence that the estate held and operated unprofitable and debt-burdened businesses to which it transferred moneys from other estate owned businesses. The decedent's will directed the executors to continue operating the family businesses.

David D'Addario explained that the estate was having difficulty selling its assets to pay its debts because the remaining assets had problems, such as fragmented

ownership and environmental contamination. He also spoke about the difficulty in finding potential buyers.

The plaintiff also presented evidence of the defendants' failure to pay off a debt to the largest secured creditor of the estate, Red Knot Acquisitions, Inc. (Red Knot). The parties disputed the amount of the debt, which resulted from bank debt that was consolidated and bought by Red Knot. The estate believed it had paid off $6,650,000 of the debt to Red Knot, whereas Red Knot believed the estate had paid only $5 million. Red Knot and the estate entered into a forebearance agreement that gave the estate an option to pay off the debt at a discounted rate. The rate of discount was dependent upon the timeliness of the estate's payment and was set to expire on January 7, 2003. Negotiations to extend the payout period were ongoing at the time of the trial.

The plaintiff also presented evidence of other miscellaneous transactions, including: the estate's loans to two beneficiaries, the decedent's daughter Virginia D'Addario and the decedent's widow Ann D'Addario; the estate's contribution to the Spray Trusts set up by the decedent for the benefit of his children to replace the amount improperly loaned from the trusts by the decedent prior to his death; the estate's inaccurate accounting of various transactions; and the estate's inaccurate accounting of inter-business transfers of funds.

The plaintiff presented evidence of these improprieties through their expert witness, Carlton Helming, an accountant. The plaintiff also called Harold Miller, the accountant for the D'Addario estate; David D'Addario, the named defendant and the chairman and chief executive officer of D'Addario Industries; Nicholas Vitti, the president and former chief financial officer of the

estate's businesses; and Mary Lou D'Addario, the decedent's daughter.

Shortly after the beginning of the trial, the plaintiff argued that the burden of proof should be placed upon the defendants to show that they had acted properly in their management of the estate. At the close of the plaintiff's case-in-chief, the plaintiff again argued that the burden of proof should be placed upon the defendants. The court ruled from the bench that the burden of proof was on the plaintiff to show why removal of the coexecutors was warranted. The court relied on General Statutes § 45a-242,[11] which governs the removal of fiduciaries; the decedent's will, in which he had appointed certain individuals to be executors;[12] and the jurisdictional limitations on the trial court sitting as a Probate Court in a probate appeal. Immediately thereafter, the trial judge dismissed the case, sua sponte. The court made no finding of whether there had been a breach of fiduciary duty. Rather, the court focused on the lack of evidence warranting removal.[13]

[11] General Statutes § 45a-242 (a) provides in relevant part: "The court of probate having jurisdiction may, upon its own motion or upon the application and complaint of any person interested or of the surety upon the fiduciary's probate bond, after notice and hearing, remove any fiduciary if: (1) The fiduciary becomes incapable of executing such fiduciary's trust, neglects to perform the duties of such fiduciary's trust, [or] wastes the estate in such fiduciary's charge . . . ."

[12] The will also contained the following language: "I direct that my executor, or any one of them, shall not be liable to any person interested in my estate for any action or failure to act while serving as a director or partner or in a similar capacity, other than for fraud or willful misconduct."

[13] For example, the trial court discussed the evidence regarding the Honey Spot Road Extension property as follows:

"[Plaintiff's Counsel]: Your Honor, at a minimum I think we have found a textbook example of breach of fiduciary duty here during the course of this trial. And I'm referring, of course, Your Honor, to the transaction involving the Honey Spot Road Extension property in Stratford. . . . It was sold to someone whom we believe is a good case to be made that was a straw man to be picked up by an executor and a beneficiary of the estate and flipped for profit and nothing accrued —

"The Court: It's hard to say there's evidence of that. I mean we never heard from him [the straw man]. And all we heard was the characterization

The court stated that the plaintiff had failed to meet its burden of proof because the evidence had established that: (1) the coexecutors were engaged in ongoing negotiations with Red Knot to extend the timetable to pay off the debt; (2) the current executors would be in a better position to continue the negotiations than a new professional executor; and (3) assets that had been characterized as tax losses that should have been sold had other value. The court noted that the plaintiff's expert, in formulating his opinions, had failed to consider records that had been on file with the Probate Court for a year or longer, including dispositive court rulings that had approved certain transactions questioned by the plaintiff. The expert presented no plan for liquidation, but testified that a professional executor could wrap up the estate in one to two years subject to a litigation contingency. The court believed that the executors could wrap things up as quickly. Finally, the court rejected portions of the expert's report, including his estimate of the loss incurred by the estate on the loan to Virginia D'Addario, which had been approved by the Probate Court, and the figures on the Spray Trusts claim, which had been audited by the IRS.

The plaintiff claims on appeal that the court improperly assigned to it the burden of proving a breach of fiduciary duty. These alleged breaches were of two types: (1) acts of self-dealing and conflict of interest, specifically transactions involving the Honeyspot Road Extension property, the condominiums, and the life insurance policy for Ann D'Addario; and (2) waste of estate assets, specifically the continued operation of failing businesses and the transfer of moneys to these businesses and the payments for condominium mainte-

from [David] D'Addario. We do have documents that, you're correct, that [David] D'Addario was incorrect about the amount of taxes, substantially off, yes."

nance, for Ann D'Addario's life insurance policy and for David D'Addario's company car.

We first set forth the proper standard of review. When a party contests the burden of proof applied by the trial court, the standard of review is de novo because the matter is a question of law. *Satti* v. *Kozek*, 58 Conn. App. 768, 771, 755 A.2d 333, cert. denied, 254 Conn. 928, 761 A.2d 755 (2000).

We have held that an executor has a fiduciary duty to the creditors of the estate. "An executrix has a fiduciary responsibility 'to maintain an undivided loyalty to the estate'; *Ramsdell* v. *Union Trust Co.*, 202 Conn. 57, 65, 519 A.2d 1185 (1987); and must diligently represent 'the rights of the heirs and distributees and also those of creditors.' *Finnegan* v. *LaFontaine*, 122 Conn. 561, 567, 191 A. 337 (1937)." *Hall* v. *Schoenwetter*, 239 Conn. 553, 559, 686 A.2d 980 (1996).

"Our law on the obligations of a fiduciary is well settled. [A] fiduciary or confidential relationship is characterized by a unique degree of trust and confidence between the parties, one of whom has superior knowledge, skill or expertise and is under a duty to represent the interests of the other. . . . The superior position of the fiduciary or dominant party affords him great opportunity for abuse of the confidence reposed in him. . . . *Konover Development Corp.* v. *Zeller*, 228 Conn. 206, 219, 635 A.2d 798 (1994). Once a [fiduciary] relationship is found to exist, the burden of proving fair dealing properly shifts to the fiduciary. . . . Furthermore, the standard of proof for establishing fair dealing is not the ordinary standard of fair preponderance of the evidence, but requires proof either by clear and convincing evidence, clear and satisfactory evidence or clear, convincing and unequivocal evidence. . . . *Dunham* v. *Dunham*, 204 Conn. 303, 322–23, 528 A.2d 1123 (1987), overruled in part on other grounds by *Santopietro* v. *New Haven*, 239 Conn. 207, 213 n.8, 682 A.2d 106 (1996). Proof of a fiduciary relationship, therefore, generally

imposes a twofold burden on the fiduciary. First, the burden of proof shifts to the fiduciary; and second, the standard of proof is clear and convincing evidence." (Internal quotation marks omitted.) *Murphy* v. *Wakelee*, 247 Conn. 396, 400, 721 A.2d 1181 (1998).

"Although not always expressly stated, the basis upon which the aforementioned burden shifting and enhanced burden of proof rests is, essentially, that undue influence will not be presumed; *Connell* v. *Colwell*, 214 Conn. 242, 252, 571 A.2d 116 (1990) (fraud is not presumed and burden of establishing fraud rests on party who alleges it); and that the presumption of fraud does not arise from the relationship itself. We note, however, that [this] rule is somewhat relaxed in cases where a fiduciary relation exists between the parties to a transaction or contract, and where one has a dominant and controlling force or influence over the other. In such cases, *if the superior party obtains a possible benefit*, equity raises a presumption against the validity of the transaction or contract, and casts upon such party the burden of proving fairness, honesty, and integrity in the transaction or contract. . . . 37 Am. Jur. 2d 601–602, Fraud and Deceit § 441 (1968); see also *United Founders Life Ins. Co.* v. *Carey*, 347 S.W.2d 295, 307 (Tex. App. 1961) (when fiduciary relationship is shown and involved transaction is attacked for fraud and party accused has obtained advantage, presumption of unfairness arises which such party must dispel by showing transactions fairly made), rev'd on other grounds, 363 S.W.2d 236 (Tex. 1962). Therefore, it is only when the confidential relationship is shown together with suspicious circumstances, or where there is a transaction, contract, or transfer between persons in a confidential or fiduciary relationship, and where the dominant party is the beneficiary of the transaction, contract, or transfer, that the burden shifts to the fiduciary to prove fair dealing. 25 Am. Jur. 2d 551, Duress

and Undue Influence § 38 (1996). A fiduciary seeking to profit by a transaction with the one who confided in him has the burden of showing that he has not taken advantage of his influence or knowledge and that the arrangement is fair and conscientious. Id., 552; see also *Nichols* v. *McCarthy*, [53 Conn. 299, 307–308, 23 A. 93 (1885)]." (Emphasis in original; internal quotation marks omitted.) *Murphy* v. *Wakelee*, supra, 247 Conn. 405–406. Generally, therefore, when a breach of fiduciary duty is alleged, and the allegations concern fraud, self-dealing or a conflict of interest, the burden of proof shifts to the fiduciary to prove fair dealing by clear and convincing evidence. Id., 400.

Before applying this common-law burden shifting scheme to this case, we review the law concerning removal of fiduciaries. The court may remove an executor pursuant to § 45a-242 (a), which provides in relevant part: "The court of probate having jurisdiction may, upon its own motion or upon the application and complaint of any person interested or of the surety upon the fiduciary's probate bond, after notice and hearing, remove any fiduciary if: (1) The fiduciary becomes incapable of executing such fiduciary's trust, neglects to perform the duties of such fiduciary's trust, [or] wastes the estate in such fiduciary's charge . . . ." The term "fiduciary" in § 45a-242 "includes an executor, administrator, trustee, conservator or guardian." General Statutes § 45a-199.

Our case law recognizes that "[r]emoval of an executor is an extraordinary remedy designed to protect against harm caused by the continuing depletion or mismanagement of an estate. . . . In the absence of continuing harm to the interests of the estate and its beneficiaries, removal is not justified merely as a punishment for a fiduciary's past misconduct." (Citations omitted.) *Ramsdell* v. *Union Trust Co.*, supra, 202 Conn. 66–67.

Our case law governing the duties of testamentary trustees also provides some guidance. "In no case ought the trustee to be removed where there is no danger of a breach of trust, and some of the beneficiaries are satisfied with the management. Nor will a trustee be removed for every violation of duty, or even breach of trust, if the fund is in no danger of being lost. The power of removal of trustees appointed by deed or will ought to be exercised sparingly by the courts. There must be a clear necessity for interference to save the trust property. Mere error, or even breach of trust, may not be sufficient; there must be such misconduct as to show want of capacity or of fidelity, putting the trust in jeopardy." (Internal quotation marks omitted.) *Phillips* v. *Moeller*, 148 Conn. 361, 369, 170 A.2d 897 (1961).

Our research has revealed only one case in which a party claimed that the burden shifting rule employed when breach of fiduciary duty is alleged applies in the context of removal proceedings. In *Satti* v. *Kozek*, supra, 58 Conn. App. 771, the plaintiffs had filed a petition to remove the defendant as the administrator of the estate of Charles Satti. The plaintiffs' interest in the estate is not clear from the Appellate Court's opinion. The Probate Court denied the petition and approved, in part, the defendant's final accounting of the estate. Id., 669. The plaintiffs then appealed to the Superior Court claiming that the defendant's interests conflicted with those of the estate and, therefore, he was required to prove fair dealing with the estate by clear and convincing evidence. Id., 771. The court concluded that "the fiduciary's performance was, by any applicable standard of proof, well within the range of acceptability"; (internal quotation marks omitted) id., 771–72; and rendered judgment for the defendant. The plaintiffs then appealed to the Appellate Court claiming that the trial court improperly had failed to place the burden on the defendant to prove, by clear and convincing

evidence, that he had not breached his fiduciary duty. Id., 771.

On appeal, the Appellate Court noted that "[i]n certain instances where it is alleged that a fiduciary has breached his duty, the burden of proof shifts such that the fiduciary has the burden of proving fair dealing by clear and convincing evidence." Id. The Appellate Court then noted that the trial court's ruling had been premised on its conclusion that the defendant's performance had been acceptable "by *any* applicable standard of proof." (Emphasis added.) Id., 771–72. Accordingly, it concluded that the trial court had held the defendant to the appropriate standard and affirmed the judgment. Id., 772. The Appellate Court did not address our case law holding that removal of an executor is an extraordinary remedy and will not be ordered absent "continuing harm to the interests of the estate and its beneficiaries . . . ." *Ramsdell* v. *Union Trust Co.*, supra, 202 Conn. 67.

In the present case, the plaintiff relies on *Satti* to support its claim that the trial court improperly failed to place the burden on the defendants to prove that they had not breached their fiduciary duty to the plaintiff. As we have noted, however, because the Appellate Court in *Satti* relied on the trial court's statement that the defendants' conduct had satisfied *any* burden of proof, it simply had no need to consider the question whether, in removal proceedings, the fiduciary faces the same high burden of proof that it faces in other cases where a breach of fiduciary duty is claimed. Accordingly, we address that question in this case as a matter of first impression.[14]

In considering this question, it is useful to examine the policies underlying the apparently conflicting rules

[11] Our research has not revealed any cases from other jurisdictions considering this issue.

that: (1) the burden of proof is ordinarily shifted to the fiduciary when breach of fiduciary duty is alleged; and (2) removal of an estate's fiduciary will not be ordered except in extraordinary cases to avoid continuing harm to the interests of the estate. Underlying the former rule is the recognition that the fiduciary's principal has voluntarily placed "a unique degree of trust and confidence [in the fiduciary, who] has superior knowledge, skill or expertise" that is to be exercised on behalf of the principal. *Macomber* v. *Travelers Property & Casualty Corp.*, 261 Conn. 620, 640, 804 A.2d 180 (2002); *Konover Development Corp.* v. *Zeller*, supra, 228 Conn. 219. Accordingly, when the fiduciary has a "dominant and controlling force or influence" over his principal, or the transaction at issue, the burden shifts to the fiduciary to prove the "fairness, honesty and integrity in the transaction . . . ." *Murphy* v. *Wakelee*, supra, 247 Conn. 405. In contrast, underlying the rule that removal is an extraordinary remedy to be applied sparingly is the recognition that the decedent has specifically chosen the fiduciary for the specific purpose of administering his estate and managing the claims of persons with conflicting interests in the estate.[15] Thus, although the decedent has voluntarily entrusted the

---

[15] *Hartt* v. *Hartt*, 75 Wyo. 305, 355–59, 295 P.2d 985 (1956), provides a detailed discussion of the rationale underlying removal as discussed by the courts of several states. "[I]t should be and is the policy of the law to give effect, as far as it can be legally done, to the expressed will of the deceased. The nomination of the executor is evidence of the confidence reposed in him by the testator, and the deliberate purpose and desire thus solemnly expressed as to the administration should not be thwarted, unless the plain provisions of the law or the interests of justice demand it." (Internal quotation marks omitted.) Id., 358. "Nomination of a person to act as his executor by one making his will imports signal trust and confidence in the particular person so named. Such nominations with respect to natural persons as matter of common knowledge are inserted in a will because the one executing the will reposes special reliance upon the individual integrity, sagacity, capacity, good faith, friendliness and sympathy with testamentary wishes on the part of the specified person." (Internal quotation marks omitted.) Id., 357.

management of his estate into the hands of the executor because of his expertise, knowledge or skill, the creditor has not voluntarily entrusted the executor with managing its claim. Thus, the executor's primary duty is to the estate itself, and to fulfilling the intentions of the decedent with respect to the estate. Only secondarily is the executor's duty to those with conflicting interests in the estate, vis-á-vis the decedent, with whom, nevertheless, the fiduciary is obligated to deal fairly. Thus, although we have recognized that the executor of an estate has a fiduciary duty to its creditors; *Hall* v. *Schoenwetter,* supra, 239 Conn. 559; that duty does not rise to the level of the duty owed by a fiduciary to a principal who voluntarily has placed his confidence and trust in the fiduciary for a specific purpose.

With these considerations in mind, we conclude that the burden shifting that ordinarily is employed when a plaintiff has alleged a breach of fiduciary duty does not apply in removal proceedings. Instead, the burden is on the party seeking removal to establish that removal is required to prevent continuing harm to the interests of the estate. Accordingly, we reject the plaintiff's claim to the contrary.

The plaintiff's remaining claims all stem from its assertion that the court improperly dismissed the case sua sponte due to the plaintiff's failure to establish a prima facie case. Specifically, the plaintiff claims that the court, in dismissing the case sua sponte, improperly weighed the evidence and failed to view it in the light most favorable to the plaintiff.

In support of its claim, the plaintiff relies on our case law stating that "to establish a prima facie case, the proponent must submit evidence which, if credited, is sufficient to establish the fact or facts which it is adduced to prove. . . . In evaluating a motion to dismiss, [t]he evidence offered by the plaintiff is to be

taken as true and interpreted in the light most favorable to [the plaintiff], and every reasonable inference is to be drawn in [the plaintiff's] favor. . . . A party has the same right to submit a weak case as he has to submit a strong one." (Internal quotation marks omitted.) *Grondin* v. *Curi*, 262 Conn. 637, 647–48 n.12, 817 A.2d 61 (2003).

The plaintiff fails to recognize, however, that these principles apply only in cases where the court's dismissal prevents the plaintiff from presenting his case to the fact finder for consideration on the merits. See *New England Savings Bank* v. *Bedford Realty Corp.*, 246 Conn. 594, 608, 717 A.2d 713 (1998) ("[a] prima facie case . . . is one sufficient to raise an issue to go to the trier of fact"). In such cases, this court considers only whether there was sufficient evidence to allow the fact finder to consider the claim. In the present case, the trial court *was* the fact finder. Thus, notwithstanding the trial court's characterization of its ruling as a dismissal for failure to establish a prima facie case, the question before us is not whether the evidence was sufficient to present the claim to a finder of fact, but whether, having presented its case to the fact finder at trial, the plaintiff sustained its burden of proof. "In a case tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony." *Kimberly-Clark Corp.* v. *Dubno*, 204 Conn. 137, 153, 527 A.2d 679 (1987). "It is within the province of the trial court, as the fact finder, to weigh the evidence presented and determine the credibility and effect to be given the evidence." (Internal quotation marks omitted.) *Briggs* v. *McWeeny*, 260 Conn. 296, 327, 796 A.2d 516 (2002). Upon careful review of the evidence, we conclude that the trial court reasonably could have concluded that the plaintiff did not sustain its burden of proof. Accordingly, we reject this claim.

The defendants' appeal is dismissed; the judgment of the trial court is affirmed.

In this opinion the other justices concurred.