******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# IN RE PROBATE APPEAL OF DOUGLAS MCINTYRE
## (AC 43751)

Bright, C. J., and Alvord and Pellegrino, Js.

*Syllabus*

The plaintiff, individually and as custodian of an account created for the benefit of his son, D, pursuant to the Connecticut Uniform Transfers to Minors Act (§ 45a-557 et seq.), appealed to the trial court from the decree of the Probate Court removing him as the custodian of the account and naming the defendant, the plaintiff's former wife and D's mother, as the successor custodian. Prior to the dissolution of the parties' marriage, the plaintiff withdrew funds from D's UTMA account and deposited them into a transfer on death account, which the plaintiff owned and which named D as the primary beneficiary. The plaintiff also withdrew funds from a UTMA account naming another one of the parties' sons, R, as the beneficiary and, with those funds and certain other funds that he contributed, established two additional transfer on death accounts, which the plaintiff owned and which named R and the parties' third son, respectively, as beneficiaries. Acting on the advice of counsel, the plaintiff thereafter withdrew funds from each of the transfer on death accounts to pay personal legal expenses relating to the parties' postdissolution proceedings. The defendant filed a petition in Probate Court requesting that the funds the plaintiff removed from D's UTMA account be restored, that the plaintiff be removed as the custodian of the account, and that the defendant be appointed as the successor custodian. The Probate Court decreed that the plaintiff be removed as the custodian of the account and that the defendant be named as the successor custodian. The defendant also filed a separate petition with respect to R's UTMA account and the Probate Court rendered a similar decree. The plaintiff appealed to the trial court only from the decree relating to D's UTMA account. The trial court affirmed the decree of the Probate Court to remove the plaintiff as custodian of D's UTMA account and further ordered that the defendant should continue as the successor custodian for the accounts benefitting all three of the parties' children. On the plaintiff's appeal to this court, *held*:

1. The trial court lacked subject matter jurisdiction to make its orders relating to the custodial arrangements for the UTMA accounts that were created for the benefit of R and the parties' third son: because the plaintiff appealed to the trial court only from the decree of the Probate Court that related to D's UTMA account, in determining that the plaintiff be removed as custodian and that the defendant be allowed to continue as custodian for the UTMA accounts for the benefit of the parties' other two children, the trial court considered issues that were beyond the scope of the decree of the Probate Court from which the plaintiff appealed.

2. The trial court improperly placed the burden of proof on the plaintiff to demonstrate that his removal as custodian was not warranted: pursuant to *Cadle Co.* v. *D'Addario* (268 Conn. 441), the burden was on the party seeking removal to establish that removal was required to prevent continuing harm to the interests of the beneficiary, and the trial court's attempt to distinguish the present case from *Cadle Co.* was improper because D, as the beneficiary of the UTMA account, was in a position similar to the beneficiaries in *Cadle Co.*, in that he did not have the right to dictate the identity of the custodian, and the fact that he was in a position dissimilar to that of the decedent in *Cadle Co.*, who was able to select the custodian, was irrelevant; moreover, the defendant's claim that the trial court determined that she had met her burden and that the plaintiff failed to produce evidence to refute that which she had produced was unavailing, as the argument was contrary to the trial court's decision, which did not address the defendant's burden of proof; furthermore, it was not clear that the trial court's application of the incorrect burden of proof was harmless, as its focus in determining that removal was required was almost entirely on the plaintiff's past breach of fiduciary duty and, therefore, it was not clear that the trial court

would have reached the same decision if it had applied the burden of proof correctly.

Argued April 20—officially released September 14, 2021

*Procedural History*

Appeal from the decree of the Probate Court for the district of Northern Fairfield County removing the plaintiff Ian McIntyre as the custodian of an account created for the benefit of his minor son pursuant to the Connecticut Uniform Transfers to Minors Act, brought to the Superior Court in the judicial district of Danbury and tried to the court, *D'Andrea, J.*; judgment affirming the Probate Court's decree, from which the plaintiff appealed to this court. *Reversed*; *further proceedings*.

*Andrew S. Knott*, with whom, on the brief, was *Robert J. Santoro*, for the appellant (plaintiff).

*Vincent N. Amendola, Jr.*, for the appellee (defendant Janine Carbonaro).

*Opinion*

BRIGHT, C. J. The plaintiff, Ian McIntyre, individually and as the custodian of an account created pursuant to the Connecticut Uniform Transfers to Minors Act (UTMA), General Statutes § 45a-557 et seq.[1] for the benefit of his son, Douglas McIntyre, appeals from the judgment of the Superior Court denying his appeal from a decree of the Probate Court removing him as the custodian of the account and naming the defendant[2] Janine Carbonaro as the successor custodian. On appeal, the plaintiff claims that the Superior Court (1) lacked subject matter jurisdiction to make certain orders and (2) improperly placed the burden of proof on him to prove that his removal as custodian was not warranted.[3] We agree with both claims.

The following facts, as found by the Superior Court, and procedural history are relevant to our resolution of this appeal. The parties were divorced in 2013, and have three children. The plaintiff was the custodian of a UTMA account that named the parties' middle child, Douglas McIntyre, as the beneficiary (account). In March, 2010, prior to the dissolution of the parties' marriage, the plaintiff withdrew funds totaling $16,424.76 from the account and deposited those funds into a transfer on death account,[4] which the plaintiff owned and which named Douglas McIntyre as the primary beneficiary. The plaintiff also withdrew funds from the UTMA account of the parties' eldest child, Rolt McIntyre. With these funds and additional funds that he contributed, the plaintiff opened two additional transfer on death accounts, each of which named as the beneficiary, respectively, one of the parties' remaining two children.

The plaintiff, acting on the advice of his counsel, thereafter withdrew a total of $22,928 from the transfer on death accounts, $7463 of which was withdrawn from Douglas McIntyre's transfer on death account, to pay personal legal expenses relating to postdissolution proceedings that had been initiated by the defendant. Pursuant to General Statutes § 45a-557b (a),[5] the defendant filed a petition in the Probate Court, requesting that the funds that the plaintiff had removed from the account be restored, that the plaintiff be removed as custodian of the account, and that she be appointed as the successor custodian.[6] She also filed a petition in the Probate Court seeking similar relief as to the parties' eldest child, Rolt McIntyre. Following the filing of those petitions, the plaintiff returned to Douglas McIntyre's UTMA account the funds he had withdrawn to fund Douglas McIntyre's transfer on death account. On October 12, 2017, the Probate Court decreed that the plaintiff be removed as the custodian of the account and that the defendant be named as the successor custodian. The Probate Court rendered a similar decree with regard to the account for Rolt McIntyre.

The plaintiff appealed to the Superior Court pursuant to General Statutes § 45a-186[7] from the decree of the Probate Court with respect to Douglas McIntyre only. He claimed that (1) he did not mismanage the assets, (2) he should not be removed as the custodian of the account, and (3) even if he were removed, then the successor custodian should be the individual whom he had designated, even though he did not make that designation until after the Probate Court rendered its decree. The Superior Court, *D'Andrea, J.*, affirmed the decree of the Probate Court to remove the plaintiff as the custodian of the account and determined that the defendant should continue as the successor custodian "under the UTMA for the three children . . . ." This appeal followed. Additional facts will be set forth as necessary.

I

The plaintiff first claims that, because he had appealed to the Superior Court from the decree of the Probate Court with respect to the account of Douglas McIntyre only, the Superior Court lacked subject matter jurisdiction with respect to the custodial arrangement for the UTMA accounts of the parties' remaining two children. The defendant agrees that the Superior Court only had subject matter jurisdiction to consider the plaintiff's removal and her appointment as the successor custodian of Douglas McIntyre's UTMA account. We agree.

The plaintiff's claim, which raises the issue of subject matter jurisdiction for the first time on appeal, is reviewable. See *Premier Capital, LLC* v. *Shaw*, 189 Conn. App. 1, 5, 206 A.3d 237 (2019) ("subject matter jurisdiction may be raised at any time during the proceedings . . . including on appeal" (internal quotation marks omitted)). "We have long held that because [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary. . . . Subject matter jurisdiction involves the authority of the court to adjudicate the type of controversy presented by the action before it. . . . [A] judgment rendered without subject matter jurisdiction is void." (Citation omitted; internal quotation marks omitted.) *Labissoniere* v. *Gaylord Hospital, Inc.*, 199 Conn. App. 265, 275–76, 235 A.3d 589, cert. denied, 335 Conn. 968, 240 A.3d 284 (2020), and cert. denied, 335 Conn. 968, 240 A.3d 285 (2020).

Notwithstanding the fact that the plaintiff appealed from the decree of the Probate Court *only* as to Douglas McIntyre, the Superior Court concluded that the plaintiff be removed as custodian and the defendant "be allowed to continue as custodian under the UTMA for the *three* children . . . ." (Emphasis added.) In so concluding, the Superior Court considered issues beyond the scope of the decree of the Probate Court from which

the plaintiff had appealed. "[A] probate appeal . . . brings to the Superior Court *only* the order appealed from. The order remains intact until modified by a judgment of the Superior Court after a hearing de novo on the issues presented for review by the reasons of appeal. . . . The Superior Court may not consider or adjudicate issues beyond the scope of those proper for determination by the order or decree attacked. . . . The Superior Court, therefore, cannot enlarge the scope of the appeal." (Emphasis added; internal quotation marks omitted.) *Marshall* v. *Marshall*, 71 Conn. App. 565, 569–70, 803 A.2d 919, cert. denied, 261 Conn. 941, 808 A.2d 1132 (2002).

Accordingly, the Superior Court had subject matter jurisdiction only over the matter of the Probate Court with respect to Douglas McIntyre because that was the only matter from which the plaintiff had appealed. The Superior Court did not have jurisdiction to determine the custodian of any existing UTMA accounts of the parties' remaining two children because there was no appeal before the Superior Court concerning any UTMA accounts of those children.[8] Consequently, the judgment of the Superior Court as to those accounts is reversed.

## II

The plaintiff next claims that the Superior Court improperly placed the burden of proof on him, rather than on the defendant who sought his removal as the custodian of the account. He contends that in doing so the Superior Court improperly failed to follow the precedent of our Supreme Court in *Cadle Co*. v. *D'Addario*, 268 Conn. 441, 844 A.2d 836 (2004) (*Cadle*). We agree.

"When a party contests the burden of proof applied by the trial court, the standard of review is de novo because the matter is a question of law." Id., 455.

Our analysis is controlled by the decision of our Supreme Court in *Cadle*. In that case, the plaintiff, an unsecured creditor of the estate of the decedent, appealed to the Superior Court from the denial by the Probate Court of its motion for an order seeking, inter alia, the removal of both coexecutors of the decedent's estate. Id., 442–43. On appeal, the plaintiff creditor claimed that the trial court improperly had placed the burden of proof on it to show why removal of the coexecutors was warranted. Id., 449. Our Supreme Court examined whether the following common-law burden shifting scheme was applicable: "Generally . . . when a breach of fiduciary duty is alleged, and the allegations concern fraud, self-dealing or a conflict of interest, the burden of proof shifts to the fiduciary to prove fair dealing by clear and convincing evidence." Id., 457. After citing General Statutes § 45a-242,[9] which concerns the removal of fiduciaries by the Probate Court, our Supreme Court explained: "Our case law

recognizes that [r]emoval of an executor is an extraordinary remedy designed to protect against harm caused by the continuing depletion or mismanagement of an estate. . . . In the absence of continuing harm to the interests of the estate and its beneficiaries, removal is not justified merely as a punishment for a fiduciary's past misconduct." (Internal quotation marks omitted.) Id.

In considering the issue of first impression, our Supreme Court noted that "it is useful to examine the policies underlying the apparently conflicting rules that: (1) the burden of proof is ordinarily shifted to the fiduciary when breach of fiduciary duty is alleged; and (2) removal of an estate's fiduciary will not be ordered except in extraordinary cases to avoid continuing harm to the interests of the estate. Underlying the former rule is the recognition that the fiduciary's principal has voluntarily placed a unique degree of trust and confidence [in the fiduciary, who] has superior knowledge, skill or expertise that is to be exercised on behalf of the principal. . . . Accordingly, when the fiduciary has a dominant and controlling force or influence over his principal, or the transaction at issue, the burden shifts to the fiduciary to prove the fairness, honesty and integrity in the transaction . . . . In contrast, underlying the rule that removal is an extraordinary remedy to be applied sparingly is the recognition that the decedent has specifically chosen the fiduciary for the specific purpose of administering his estate and managing the claims of persons with conflicting interests in the estate." (Citations omitted; internal quotation marks omitted.) Id., 459–60.

Our Supreme Court reasoned that, "although the decedent has voluntarily entrusted the management of his estate into the hands of the executor because of his expertise, knowledge or skill, the creditor has not voluntarily entrusted the executor with managing its claim. Thus, the executor's primary duty is to the estate itself, and to fulfilling the intentions of the decedent with respect to the estate. Only secondarily is the executor's duty to those with conflicting interests in the estate, vis-à-vis the decedent, with whom, nevertheless, the fiduciary is obligated to deal fairly. Thus, although we have recognized that the executor of an estate has a fiduciary duty to its creditors . . . that duty does not rise to the level of the duty owed by a fiduciary to a principal who voluntarily has placed his confidence and trust in the fiduciary for a specific purpose." (Citation omitted.) Id., 460–61. The court concluded that "the burden shifting that ordinarily is employed when a plaintiff has alleged a breach of fiduciary duty does not apply in removal proceedings. Instead, the burden is on the party seeking removal to establish that removal is required to prevent continuing harm to the interests of the estate." Id., 461.

In the present case, the Superior Court determined: "After review of all the pleadings, live witness testimony, submitted exhibits, and parties' posttrial memoranda, it is, therefore, the decision of this court that the plaintiff/appellant has not maintained his burden of proof on this appeal, therefore, the [Probate Court's] decision to remove him as custodian under the UTMA is affirmed . . . ." The Superior Court reached this conclusion despite the clear holding in *Cadle* that the burden of proof rests on the party seeking removal. *Cadle Co.* v. *D'Addario*, supra, 268 Conn. 461; see also *In re Probate Appeal of Cadle Co.*, 152 Conn. App. 427, 442–43, 100 A.3d 30 (2014). The Superior Court placed the burden of proof on the plaintiff apparently because it concluded that "*Cadle* is factually so different, as to make it inapplicable."

In particular, the Superior Court stated that "*Cadle* involved the removal of the executor, handpicked by the decedent, to control his estate, a decision showing the decedent's faith in the selection of executor. That is a significant difference than what occurred here. Not only did [Douglas McIntyre] in 2010 not personally select the plaintiff . . . [he] most certainly had no knowledge of even the existence of [the UTMA account]. [His] wishes, unlike that of [the] decedent in *Cadle*, could not have been involved in the selection of the plaintiff . . . [as the custodian]." The plaintiff argues that the Superior Court improperly "attempts to distinguish *Cadle* . . . by arguing that [the beneficiary of the account] did not choose the plaintiff to be his UTMA custodian; therefore, the plaintiff should not be entitled to any special protection of the high burden of removing a fiduciary." We agree that the Superior Court improperly distinguished *Cadle*.

The fact that the beneficiary of the UTMA account is in a position dissimilar to that of the decedent in *Cadle* because the beneficiary did not create the account or voluntarily select the custodian is irrelevant. Douglas McIntyre's interest in the UTMA account is akin to that of the beneficiaries of the estate in *Cadle*. Like the beneficiary of a UTMA account, the beneficiaries of an estate do not have a right to dictate who the fiduciary is. That decision is left to the decedent of the estate or the person who funds the UTMA account. In the present case, it was decided when the account was created that the plaintiff would be the custodian.[10] The plaintiff, as the person who established the account, is in a position similar to that of the decedent testator in *Cadle*. In both situations, the person creating the corpus that would ultimately benefit others chose a person they trusted to manage those funds. By choosing to create a UTMA account for Douglas McIntyre, as to which he was the custodian, as opposed to some other vehicle such as a trust managed by a third party, the plaintiff, as transferor, voluntarily chose to subject the account he and

his family members funded to the requirements of the UTMA, including those pertaining to the obligations of and the removal of the custodian. See General Statutes § 45a-557 et seq. It follows, then, that the transferor selects the custodian for the specific purpose of fulfilling the requirements of the UTMA, the goal of which is to preserve the property of the minor beneficiary. See *Mangiante* v. *Niemiec*, 82 Conn. App. 277, 282, 843 A.2d 656 (2004) (discussing goal of UTMA). The custodian does not owe an obligation to an individual in his or her capacity as a party seeking removal[11] that is higher than the duty that the custodian has to abide by under UTMA and, thereby, has to the minor beneficiary. See id., 282–83 (custodian of UTMA account owes fiduciary duty to beneficiary). Therefore, placing the burden of proof on the party who seeks the removal of the custodian of a UTMA account is consistent with the rule that removal is an extraordinary remedy. Accordingly, we conclude that the Superior Court improperly placed the burden of proof on the plaintiff custodian. See *Cadle Co*. v. *D'Addario*, supra, 268 Conn. 461 (party seeking removal has burden to establish that removal is required); see also *In re Taylor's Estate*, 5 Ariz. App. 144, 147, 424 P.2d 186 (1967) (party seeking removal of trustee has burden of proof); *Matter of Rose BB*., 243 App. Div. 2d 999, 1000, 663 N.Y.S.2d 415 (1997) (same); *Tomazic* v. *Rapoport*, 977 N.E.2d 1068, 1074 (Ohio App. 2012) (same), review denied, 134 Ohio St. 3d 1485, 984 N.E.2d 29 (2013); *Guerra* v. *Alexander*, Docket No. 04-09-00004-CV, 2010 WL 2103203, *6 (Tex. App. May 26, 2010) (same), review denied, Texas Supreme Court, Docket No. 10-0982 (October 21, 2011); 1 Restatement (Third), Trusts § 1, comment (a), p. 6 (2003) (referring to minors' custodianships as virtual trusts). Contrary to the Superior Court's conclusion, the plaintiff had no burden of proof to maintain.

Significantly, the defendant does not dispute this conclusion. She concedes on appeal that it was her burden to prove that the plaintiff should be removed as the custodian of the account. She argues that she met her burden and that the court's findings make that clear. In particular, the defendant points to the court's findings that the plaintiff's withdrawal of funds from the account in 2010, his personal use of the funds for years, and his failure to return the funds until ordered to do so by the Probate Court "can be described in [no] other way than self-serving, intentional acts that '[waste] the estate in such fiduciary's charge.' Any other interpretation strains logic and credulity. Based on this ground alone, the Probate Court was justified in removing the [plaintiff] as custodian of the [account]." The Superior Court also described the plaintiff's conduct as "self-serving intentional acts that display a persistent failure to administer the estate effectively." The court also stated that removal as the custodian of the account was not " 'punishment for a fiduciary's past misconduct'

because the conduct never ended, and would not have ended, until it was terminated involuntarily by the [Probate Court's] order." In addition, the Superior Court held: "Even assuming, arguendo, that *Cadle* is applicable, the criteria to approve removal of a fiduciary to protect against harm caused by the continuing depletion or mismanagement of an estate is clearly satisfied. [The plaintiff], for seven and one-half years, until discovered, brought to the [Probate Court], and then stopped only by an order of the [Probate Court], had unfettered access to the funds in his name, to use however he chose, and after showing that he had no hesitancy in using the same for his own benefit. The only logical conclusion that can be reached is that removal was required. Any other interpretation strains logic and credulity. Therefore, *Cadle* is not controlling [on] this matter." (Internal quotation marks omitted.)

The defendant argues that, read as a whole, the court's memorandum of decision makes clear that the court concluded that the defendant met her burden to prove that removal of the plaintiff as custodian was warranted. She argues that the court's statement that the plaintiff "has not maintained his burden of proof on this appeal" meant that "the plaintiff did not meet his burden of proof when he failed to produce evidence to refute or rebut that of the [defendant]." She, therefore, concludes that "[t]here are no grounds to support the claim that the court shifted the burden of proof upon the plaintiff in this case." We are not persuaded.

First, we disagree with the defendant that the court's conclusion that the plaintiff failed to maintain his burden of proof reasonably can be read to mean only that the plaintiff failed to produce evidence to rebut the defendant's evidence. That is not what the court said. Furthermore, the court, in its memorandum of decision, never mentioned that the defendant bore or met any burden of proof. Finally, the Superior Court took great pains to distinguish the present case from *Cadle*. Given that the key holding at issue in *Cadle*, as it relates to the present case, is who bore the burden of proof, we conclude that the Superior Court, in holding that *Cadle* was inapplicable and not controlling, decided that, on the basis of the facts of the present case, the plaintiff bore the burden of proof.

Second, we are not convinced that the court's application of an incorrect burden of proof was harmless. See *Papallo* v. *Lefebvre*, 172 Conn. App. 746, 756, 161 A.3d 603 (2017) (applying harmless error analysis to incorrect assignment of burden of proof in breach of fiduciary duty case). There is no dispute in the present case that the plaintiff breached his fiduciary duty to Douglas McIntyre when he removed funds from the account and used them for his personal legal expenses. The question for the court then was whether the defendant proved that the extraordinary remedy of removal was required

"to protect against harm caused by the *continuing depletion or mismanagement of an estate. . . .* In the absence of continuing harm to the interests of the estate and its beneficiaries, removal is not justified merely as a punishment for a fiduciary's past misconduct." (Emphasis added; internal quotation marks omitted.) *Cadle Co.* v. *D'Addario*, supra, 268 Conn. 457. The Superior Court's focus in determining that removal was required was almost entirely on the plaintiff's past breach of fiduciary duty. The court did not discuss the significance of its factual finding that the plaintiff used funds from the account for his personal legal expenses based on the advice of his counsel. The court also did not discuss whether the plaintiff had properly managed the account in all other respects. Nor did the court discuss the evidence establishing that the defendant was aware of and consented to the withdrawal from the account while the parties were still married or that the plaintiff made the withdrawal based on the advice of his financial advisor.[12] Finally, there was evidence that the plaintiff returned to the account all funds he had previously withdrawn.

By referencing these facts and evidence, we do not mean to suggest that the plaintiff's breach of fiduciary duty was not significant or egregious. Rather, we are not persuaded that the Superior Court would have reached the same conclusion had it applied the burden of proof correctly. Given that removal is an extraordinary remedy and in light of the countervailing evidence submitted by plaintiff, "[t]he court's error was simply of such a fundamental nature that the only proper remedy is to reverse the judgment . . . and remand the case for a new trial . . . ." *Papallo* v. *Lefebvre*, supra, 172 Conn. App. 756.

The judgment is reversed and the case is remanded to the Superior Court for further proceedings consistent with this opinion.

In this opinion the other judges concurred.

[1] The UTMA provides for the transfer of multiple types of property to be managed by a custodian, whom the transferor may designate, for the benefit of the minor until the minor attains twenty-one years of age. See General Statutes §§ 45a-557 though 45a-560b. "[T]he overriding goal of the [UTMA] is to preserve the property of the minor who, due to her age, [is] unable to protect her interests fully. To further that goal, the legislature granted the custodian control over the property of the minor and placed the custodian under a specific duty to act for the benefit of that minor." *Mangiante* v. *Niemiec*, 82 Conn. App. 277, 282, 843 A.2d 656 (2004).

[2] Douglas McIntyre also was named as a defendant, but he did not participate in this appeal. We therefore refer to Janine Carbonaro as the defendant.

[3] The plaintiff also claims that the Superior Court improperly failed to appoint as the successor custodian the individual whom he had designated as such. We do not review this claim because it is unclear whether the Superior Court will reach this issue on remand, and we will not speculate on how the issue will be addressed if it is reached.

The plaintiff further claims that the Superior Court failed to apply a de novo standard of review to his claims. Both parties agree and we recognize that a de novo standard is the proper standard of review to be applied by a Superior Court when reviewing an order or decree of the Probate Court. See *Kerin* v. *Stangle*, 209 Conn. 260, 264, 550 A.2d 1069 (1988) ("[t]he function of the Superior Court in appeals from a Probate Court is to take jurisdiction of the order or decree appealed from and to try that issue de

novo"). Because we are reversing and remanding the matter for a new trial, we need not address the issue of whether the Superior Court had applied a de novo standard of review in its memorandum of decision in the present case.

[4] Unlike a UTMA account wherein the custodial property is indefeasibly vested in the minor following a valid transfer of custodial property; General Statutes § 45a-558h; and wherein the custodian of the UTMA account takes control of the custodian property and manages it for the benefit of the minor; see General Statutes § 45a-558i; the property in a transfer on death account passes to the beneficiary on the death of the account holder. See R. Folsom & L. Beck, Revocable Trusts and Trust Administration in Connecticut (2021) § 9.7 p. 110.

[5] General Statutes § 45a-557b (a) provides in relevant part: "Courts of probate in any district in which the transferor, the minor or the custodian is resident, or in which the custodial property is located shall have jurisdiction of any disputes or matters involving custodianship under sections 45a-557 to 45a-560b, inclusive. . . ."

[6] Prior to filing her petition in the Probate Court, the defendant, in the dissolution action between the parties, sought to open the judgment of dissolution on the basis of the alleged failure of the plaintiff to disclose on his financial affidavit three custodial accounts, each of which were held in the name of one of the parties' three children and the plaintiff. See *McIntyre* v. *McIntyre*, Superior Court, judicial district of Ansonia-Milford, Docket No. FA-11-4014913-S (May 2, 2017). The defendant sought to manage the accounts and to have the plaintiff replenish to the accounts the funds that he had removed and used for litigation expenses. Id. In its May, 2017 decision denying the motion to open, the trial court, *Grossman, J.*, determined that each party "took every opportunity to criticize the other" and that "their testimony is not reliable or credible." Id. The defendant thereafter filed an appeal from the dissolution court's denial of her motion to open. *McIntyre* v. *McIntyre*, Connecticut Appellate Court, Docket No. AC 40454 (appeal filed May 18, 2017). In her preliminary statement of issues in that appeal, the defendant contended, inter alia, that the dissolution court erred in determining that she had not proven that the plaintiff's failure to disclose on his financial affidavit the existence of the three transfer on death accounts that he had owned at the time of dissolution was fraudulent and that she had not proven fraud despite the fact that the plaintiff had liquidated the UTMA accounts and placed the funds into transfer on death accounts.

During the pendency of her appeal in the dissolution matter, the defendant filed the petitions in the Probate Court regarding the plaintiff's actions as to Douglas' and Rolt McIntyre's accounts. In the present appeal, the defendant's counsel stated at oral argument before this court that he did not bring to the attention of the Probate Court the dissolution court's denial of the motion to open. In her motion to extend time to file her appellate brief in her appeal from the judgment of the dissolution court denying her motion to open, the defendant stated that if the Probate Court were to determine that she had proven her UTMA claims, then her appeal from the dissolution court's denial of her motion to open would be rendered moot. Following the October 12, 2017 decree of the Probate Court naming the defendant as the successor custodian of the account, the defendant withdrew her appeal on December 7, 2017, from the judgment of the dissolution court denying her motion to open.

The timing and sequence of the events described in the preceding paragraphs raise the specter that the defendant has engaged in forum shopping by seeking a second bite of the apple before the Probate Court because she was dissatisfied with the judgment of Judge Grossman finding her not credible and denying her motion to open. Our courts have long discouraged the practice of forum shopping. See, e.g., *Kleen Energy Systems, LLC* v. *Commissioner of Energy & Environmental Protection*, 319 Conn. 367, 393 n.25, 125 A.3d 905 (2015) (forum shopping results in waste of judicial resources).

[7] General Statutes § 45a-186 (b) provides in relevant part that "[a]ny person aggrieved by an order, denial or decree of a Probate Court may appeal therefrom to the Superior Court. . . ."

[8] In fact, no UTMA account for the parties' youngest son was ever the subject of a petition in the Probate Court.

[9] General Statutes § 45a-242 provides in relevant part: "(a) The Probate Court having jurisdiction may, upon its own motion or upon the petition of any person interested or of the surety upon the fiduciary's probate bond, after notice and hearing, remove any fiduciary if: (1) The fiduciary becomes incapable of executing such fiduciary's trust, neglects to perform the duties of such fiduciary's trust, wastes the estate in such fiduciary's charge, or

fails to furnish any additional or substitute probate bond ordered by the court, (2) lack of cooperation among cofiduciaries substantially impairs the administration of the estate, (3) because of unfitness, unwillingness or persistent failure of the fiduciary to administer the estate effectively, the court determines that removal of the fiduciary best serves the interests of the beneficiaries, or (4) there has been a substantial change of circumstances or removal is requested by all of the beneficiaries, the court finds that removal of the fiduciary best serves the interests of all the beneficiaries and is not inconsistent with a material purpose of the governing instrument and a suitable cofiduciary or successor fiduciary is available. . . .”

[10] The court heard conflicting evidence regarding how the account was funded. The plaintiff testified that the money with which he started the account came from his grandparents and that the “vast majority” of the money in the account came from his family. The defendant testified that her parents may have contributed to the account but expressed a lack of certainty due to the passage of time. She also testified, referring to her and the plaintiff, that “we” started the account. Regardless of who contributed funds to the account, there is no question that the plaintiff was named the custodian of the account.

[11] General Statutes § 45a-559c (f) provides: “A transferor, the legal representative of a transferor, an adult member of the minor’s family, a guardian of the person of the minor, the guardian of the minor or the minor if the minor has attained the age of twelve years may petition the court to remove the custodian under section 45a-242 and to designate a successor custodian other than a transferor under section 45a-558a or to require the custodian to give appropriate bond.”

[12] In the section of its memorandum of decision entitled “Plaintiff/Appellant’s Position,” the Superior Court stated that “[c]learly, the plaintiff/appellant violated the UTMA statutes by closing the accounts and opening the [transfer on death] account, even when done with the knowledge and consent of the defendant/appellee and upon the advice of their financial advisor.” Although that statement is true and undisputed by the plaintiff, it says nothing as to whether those circumstances militate against the exercise of the extraordinary remedy of removal. In rendering judgment ordering removal, the court did not discuss the evidence submitted as to those circumstances.