MAGNUS MANKERT *v.* ELMATCO PRODUCTS,
INC., ET AL.
(AC 24351)

Lavery, C. J., and Dranginis and West, Js.

---

Argued February 25—officially released August 17, 2004

*Robert M. Singer*, for the appellant (plaintiff).

*Gordon R. Raynor*, for the appellees (defendants).

*Opinion*

DRANGINIS, J. The plaintiff, Magnus Mankert, appeals from the judgment of the trial court rendered in favor of the defendants, Elmatco Products, Inc. (Elmatco), and Diana Composites, Inc., (Diana). The plaintiff claims that the court improperly (1) denied his

request for an accounting from Elmatco and dismissed the complaint against Diana, and (2) awarded Elmatco damages on its counterclaim. We reverse the judgment of the trial court and remand the case for further proceedings.

The following facts and procedural history are relevant to the plaintiff's appeal. In 1998, the plaintiff entered into a business relationship with Elmatco to sell products manufactured in Germany by Maschinenfabrik Lauffer Gmbh (Lauffer). E. Carl Harris, Jr., president and chief executive officer of Elmatco, sent a letter to the plaintiff, confirming the agreement and outlining its terms. The plaintiff would serve as the technical director for Elmatco, and any commissions he earned would be divided between them according to the agreement.[1] The plaintiff was to receive his compensation directly or have it credited toward a debt that he owed Lauffer. The business relationship proceeded smoothly until late 2000, when the plaintiff believed that his commissions were not being paid pursuant to the agreement. Following a series of unsuccessful e-mail exchanges with Harris to resolve the matter, the plaintiff brought an action in the Superior Court on October 23, 2001.

In his first amended complaint, the plaintiff sought an accounting of certain commissions allegedly owed to him from Elmatco and Diana, a business owned and operated by Harris. The plaintiff subsequently filed a three count, third amended complaint, alleging breach of contract and unjust enrichment in one count, and

[1] According to the letter, the commissions were divided as follows: "For customers where the technical director's services are required or used you will be compensated with 30 [percent] of the total commission after subtracting 15 [percent] of the total commission for in-house expenses. In the case of an order being placed and accepted without the help of the technical director, your commission will be 20 [percent] after the 15 [percent] deduction."

two counts alleging violations of the Illinois Sales Representative Act, 820 Ill. Comp. Stat. Ann. 120-1 et seq. (West 1999).[2] Elmatco filed a counterclaim alleging that the plaintiff owed it $71,000 for sales he allegedly made on its behalf. In its memorandum of decision, the court dismissed the complaint against Diana and rendered judgment in favor of Elmatco on the plaintiff's complaint and for Elmatco on the counterclaim. The court awarded $71,000 to Elmatco on its counterclaim.

On June 4, 2003, the plaintiff filed a motion to reargue the decision, which the court denied. On June 20, 2003, the plaintiff appealed from the denial of his motion to reargue and the judgment rendered in accordance with the memorandum of decision. On August 6, 2003, the plaintiff filed a motion for articulation of the court's decision, which the court denied. On September 17, 2003, the plaintiff filed a motion for review of the court's denial of the articulation. We granted the motion, but denied the relief requested therein. We now turn to the plaintiff's appeal from the judgment of the court.

As an initial matter, we set forth the proper standard of review. "An action for an accounting calls for the application of equitable principles." *Travis* v. *St. John*, 176 Conn. 69, 74, 404 A.2d 885 (1978). "In an equitable proceeding, the trial court may examine all relevant factors to ensure that complete justice is done. . . . The determination of what equity requires in a particular case, the balancing of the equities, is a matter for the discretion of the trial court." (Internal quotation marks omitted.) *First National Bank of Chicago* v. *Maynard*, 75 Conn. App. 355, 358, 815 A.2d 1244, cert. denied, 263 Conn. 914, 821 A.2d 768 (2003).

---

[2] The plaintiff's third amended complaint did not contain a separate count for an accounting. The court found that a request for an accounting was included in the breach of contract count.

## I

The plaintiff first claims that the court improperly denied his request for an accounting from Elmatco and improperly dismissed the complaint against Diana. The plaintiff argues, among other things, that because of the complicated nature of the business agreement, he was entitled to an accounting. We agree.

"An 'accounting' is defined as an adjustment of the accounts of the parties and a rendering of a judgment for the balance ascertained to be due. An action for an accounting usually invokes the equity powers of the court, and the remedy that is most frequently resorted to . . . is by way of a suit in equity." 1 Am. Jur. 2d 609, Accounts and Accounting § 52 (1994). "An accounting is not available in an action where the amount due is readily ascertainable. Equity will ordinarily take jurisdiction to settle the account if the facts create a reasonable doubt whether adequate relief may be obtained at law." Id., 610–11, § 54. "To support an action of accounting, *one* of several conditions must exist. There must be a fiduciary relationship, *or* the existence of a mutual and/or complicated accounts, *or* a need of discovery, *or* some other special ground of equitable jurisdiction such as fraud." (Emphasis added; internal quotation marks omitted.) *C & S Research Corp.* v. *Holton Co.*, 36 Conn. Sup. 619, 621, 422 A.2d 331 (1980).

"Courts of equity have original jurisdiction to state and settle accounts, or to compel an accounting, where a fiduciary relationship exists between the parties and the defendant has a duty to render an account. The right to compel an account in equity exists not only in the case of those relationships which are traditionally regarded as those of trust and confidence, but also in those informal relations which exist whenever one person trusts in, and relies upon, another. The relationship between . . . parties to a business agreement

. . . [has] . . . been deemed to involve such confidence and trust so as to entitle one of the parties to an accounting in equity." 1 Am. Jur. 2d 612–14, supra, § 55; *C & S Research Corp.* v. *Holton Co.*, supra, 36 Conn. Sup. 621. With those equitable principles in mind, we turn to the merits of the plaintiff's claims.

## A

Elmatco contends that there is not a scintilla of evidence to substantiate any of the plaintiff's claims to warrant an accounting. Elmatco first asserts that Harris' letter, which the plaintiff received, was not an agreement, but merely part of the discussions and negotiations between the plaintiff and Elmatco regarding the establishment of a business relationship. Elmatco next asserts that the plaintiff failed to meet his burden of proof at trial because he did not produce any documentation with respect to the alleged sales; instead the plaintiff tried to obtain such documentation from Elmatco in order to make a case against Elmatco. We reject Elmatco's arguments as frivolous.

On the basis of our review of the record, we conclude that the plaintiff met one or more of the requirements for an accounting. The plaintiff and Elmatco entered into a business agreement under which the plaintiff served as Elmatco's technical director, and any commissions he earned by selling Lauffer products were to be divided pursuant to a written agreement. Elmatco was to withhold the plaintiff's share of the commissions and apply them toward the balance of the debt he owed Lauffer. The financial arrangement between Elmatco and the plaintiff created a fiduciary relationship between the parties. "The fiduciary relationship is in and of itself sufficient to form the basis for [ordering an accounting]." *Zuch* v. *Connecticut Bank & Trust Co.*, 5 Conn. App. 457, 460, 500 A.2d 565 (1985).

Here, the court found that its vista was clouded by the method of disbursing the plaintiff's commissions and by Lauffer's absence as a party.[3] The extent of the plaintiff's debt to Lauffer, however, is irrelevant to the issue of an accounting. The plaintiff's request for an accounting was based on a fiduciary relationship with Elmatco, which the plaintiff claims was breached when Elmatco failed to pay his commissions pursuant to the agreement. See *Strang* v. *Witkowski*, 138 Conn. 94, 101, 82 A.2d 624 (1951) (accounting ordered when independent salesman sought commission from partnership for work done for customers secured by him); see also *Stanley* v. *M. H. Rhodes, Inc.*, 140 Conn. 689, 697, 103 A.2d 143 (1954); *Rockwell* v. *New Departure Mfg. Co.*, 102 Conn. 255, 308–309, 128 A. 302 (1925) (accounting ordered when inventor demanded royalties owed to him pursuant to agreement). We therefore conclude that the court improperly denied the plaintiff's request for an accounting from Elmatco.

B

The plaintiff next claims that the court improperly dismissed his complaint against Diana. We agree.

At trial, the plaintiff testified that he received commissions from Diana. He introduced into evidence an Internal Revenue Service form 1099 indicating that Diana had paid him $9792 in 1999. We conclude that the form 1099 was sufficient indicia of a business relationship between Diana and the plaintiff to warrant an accounting. Accordingly, we conclude that the court improperly dismissed the plaintiff's claim against Diana.

---

[3] The court found that an accounting was impossible in light of the fact that Lauffer was not a party to the action. It is clear from the record, however, that Elmatco was the keeper of the records from which an accounting of commissions due the plaintiff could be established. The presence of Lauffer was unnecessary to the accounting that was required to establish the factually correct amounts allegedly due the plaintiff, Elmatco and Lauffer.

## II

With regard to Elmatco's counterclaim, the plaintiff claims that the court improperly awarded damages on the counterclaim because Elmatco improperly alleged that he took funds from sales that were made on its behalf. The plaintiff does not dispute that he owed money to Elmatco for money advanced for legitimate business expenses. He denied, however, Elmatco's allegations that he improperly withheld funds from it for sales he allegedly made.[4] Specifically, the plaintiff claims that Elmatco failed to meet its burden of proof regarding the allegations of its counterclaim.

While Elmatco is entitled to every favorable inference that may be legitimately drawn from the evidence, and has the same right to submit a weak case as a strong one, it must still sustain the burden of proof on the contested issues in its counterclaim and the plaintiff need not present any evidence to contradict it. The general burden of proof in this civil action is on Elmatco, which must prove all the essential allegations

[4] For the purpose of clarity, it is important to note that Elmatco's counterclaim was filed in response to the plaintiff's first amended complaint on December 21, 2001, not to the third amended complaint that the court refers to in its memorandum of decision. In its counterclaim, Elmatco alleged in relevant part: "(1) If sales were made by the plaintiff as alleged in the 'First Amended Complaint' they were not authorized by the defendants. (2) If such improper sales were made to customers of the defendants, any funds received by the plaintiff should have been submitted to the defendants. (3) Since plaintiff never submitted any funds which he is alleged to have received from said improper sales, he is indebted to the defendants."

The plaintiff's first amended complaint alleged: "(1) The parties entered into certain agreements whereby Mr. Mankert would receive commissions from the defendant corporations. (2) Said agreements provided that the plaintiff was to receive commissions on equipment sales. (3) There are amounts due for commission sales for (a) Lauffer equipment sales to Litton; (b) Lauffer equipment sales to several companies, included but limited to: Toppan, Tyco Beaverbrook, Alpha Circuits, IFL, and Taconic; (c) Equipment sales from Mayer GmbH and Print Process AG."

of the counterclaim. See *Gulycz* v. *Stop & Shop Cos.*, 29 Conn. App. 519, 523, 615 A.2d 1087, cert. denied, 224 Conn. 923, 618 A.2d 527 (1992).

Here, our review of the record indicates that Elmatco did not provide any evidence to support its claim that the plaintiff improperly withheld funds for alleged sales made to its customers. The allegations of Elmatco's counterclaim imply improper conduct by the plaintiff, which clearly differs from the plaintiff's acknowledgment that he is indebted to Elmatco for expenses he incurred during their business relationship. Without proof to support the material allegations of its counterclaim, Elmatco's claim must fail. Accordingly, the court improperly awarded damages to Elmatco on its counterclaim.

The judgment is reversed and the case is remanded with direction to render judgment for the plaintiff on the counterclaim and for further proceedings in accordance with law on the complaint.

In this opinion the other judges concurred.

