******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

SHIRLEY PAPALLO ET AL. *v.* RONALD D. LEFEBVRE
(AC 38538)

Alvord, Keller and Gruendel, Js.

*Argued December 6, 2016—officially released April 25, 2017\**

(Appeal from Superior Court, judicial district of
Litchfield, Shah, J.)

*Charles F. Brower*, for the appellants (plaintiffs).

*Opinion*

KELLER, J. The named plaintiff, Shirley Papallo (plaintiff), held a 50 percent membership interest in Big Dog Entertainment, LLC (LLC). The LLC is the other plaintiff in this matter. The defendant, Ronald D. Lefebvre, held the other 50 percent membership interest. The LLC was in the sole business of operating a bar—Central Cafe—in Plainville. During the relevant time period, the defendant managed the bar, while the plaintiff had limited involvement in its operations. In 2013, the plaintiff and the LLC (collectively plaintiffs) brought suit against the defendant alleging breach of fiduciary duty to the plaintiff, statutory theft on behalf of the LLC, and violations of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., on behalf of both plaintiffs. The plaintiffs also sought an accounting from the defendant. See, e.g., *Zuch* v. *Connecticut Bank & Trust Co.*, 5 Conn. App. 457, 460–63, 500 A.2d 565 (1985). These counts all stemmed from the defendant's alleged misappropriation and misuse of LLC assets. Specifically, the plaintiffs alleged that the defendant misappropriated LLC revenues and also participated in a "barter exchange" program through which the defendant traded food and drinks from the bar for services rendered by other participants in the barter program for his own benefit or otherwise to the exclusion of the LLC. After a trial to the court in which the plaintiffs were represented by counsel and the defendant represented himself, the court concluded that the defendant breached his fiduciary duty to the plaintiff by misusing the barter agreement, but determined that the defendant did not breach that duty through his handling of the LLC revenues. Accordingly, the court rendered judgment for the plaintiff on the breach of fiduciary duty count, but awarded compensatory damages only for the defendant's misuse of the barter agreement. The court determined that those damages amounted to $10,191.25. The court rendered judgment in favor of the defendant on the remaining counts.

On appeal, the plaintiffs claim that the court erred by concluding that (1) the defendant did not breach his fiduciary duty to the plaintiff through his handling of the LLC revenues; (2) the defendant did not have the intent necessary to be found liable for statutory theft; (3) an accounting was not warranted; and (4) the defendant's conduct did not violate CUTPA. The defendant did not participate in this appeal. We agree with the first claim but disagree with the remaining ones. Accordingly, we affirm in part and reverse in part the judgment of the court.

The following facts, as found by the court, provide additional background to the underlying dispute. "The plaintiff and the defendant met when they both worked for Associated Spring. They were colleagues and friends at the time they started discussing the purchase of a bar

that they planned to jointly own and operate. Around August of 2005, the defendant located a potential property that they both decided to purchase. Due to the defendant's recent bankruptcy filing, the parties were in a poor position to secure a business loan on behalf of the LLC. The plaintiff obtained a home equity loan in the amount of $150,000 in order to purchase the property. The parties planned for the defendant to leave his $70,000 salaried position at Associated Spring to run the bar, since the plaintiff had secured financing. She would join the defendant in running the business once she retired from Associated Spring. The parties formed the LLC as 50 percent members in December of 2005, for the purpose of operating the business. They purchased Central Cafe in May of 2006.

"The defendant operated the business solely until February of 2010. The plaintiff was still employed at Associated Spring and did not retire until July 1, 2009. During the time that the defendant managed the business, the plaintiff would occasionally come to the bar to help clean after closing. She was busy working and caring for sick family members. She had limited time to participate actively in the day-to-day management of the business and left it all to the defendant. The plaintiff's health also interfered with her full involvement with the bar even once she began regularly working at the bar in 2010.

"During the three years when the defendant solely operated the business, since the business was just starting out, he took care of everything that the business needed, including cleaning, tending to customers, closing the bar each night, balancing the register, handling the business records of the bar, and various other activities. The defendant had no experience with running a business.

"When the plaintiff began working regularly at the bar in February of 2010, she started helping with cleaning and learning how to run the banquets that the bar would host. She also started balancing the cash register at the end of each night. As she began running more of the bar, she noticed certain practices of the bar that she found questionable. She noticed that employees were paid a certain amount of wages in cash and that the cash register balances she determined at the end of each night did not match up with amounts that the defendant reported. The plaintiff also noticed that certain customers were not paying for their orders but running tabs. The defendant explained that Central Cafe was part of a barter exchange with other businesses so that the bar would allow patrons in the barter exchange to trade services they provided for food and drinks at the bar. The plaintiff never saw the barter exchange agreement or any records related to the agreement. The defendant admittedly used some of the services through the barter exchange for his own per-

sonal use and benefit.

"By that time, the defendant had hired an accountant, [Guy] Giantonio, to handle the business tax filings for the bar. When the plaintiff learned of certain record keeping practices of the bar, she decided to set up a meeting with her personal accountant, Diane Libby . . . Giantonio, and the defendant in August of 2010. In reviewing the financials of the bar, Libby said that the expenses were at least five to ten percent higher than industry benchmarks and that the income was underreported. In particular, she expressed concern over the adjustments that were done without any documentation, which was exceptional based on standard accounting practices.

"Within months of that meeting, the relationship between the parties deteriorated. At some point in 2011, the plaintiff asked if there were any profits and the defendant still indicated that there were not sufficient profits to generate equal salaries for the both of them. The plaintiff was increasingly concerned, but did not ask for specific documentation from the defendant. In 2012, she started to log the amount she counted in the register each night and compared that number to the amount noted by the defendant the following morning. The defendant was aware of the plaintiff tracking these amounts and raised the matter with her several months later. The defendant admitted that he kept cash in a drawer in the bar's office to pay for daily expenses and some employee wages. The defendant offered to buy out the plaintiff's interest in the bar so he could continue to run it, but the plaintiff believed he was simply trying to push her out so he could continue to run the business without concern for the issues she raised regarding his questionable business practices.

"The plaintiff filed this action when the defendant prevented her from entering the bar in June of 2013. The defendant subsequently transferred all of his interest in the limited liability corporation to the plaintiff in August of 2013. The plaintiff is now the sole member of the LLC and the sole owner of Central Cafe." Additional facts will be provided as necessary.

I

The plaintiff first claims that the court erred by concluding that the defendant did not breach his fiduciary duty to her through his handling of the LLC revenues. Specifically, the plaintiff argues that, although the court correctly allocated the burden of proof to the defendant with respect to her allegation that he misused the barter agreement, the court misallocated the burden of proof with respect to the plaintiff's allegation that the defendant misappropriated LLC revenues. We agree with the plaintiff.

In rendering judgment on the breach of fiduciary duty count, the court first observed that "[o]nce a fiduciary

duty is found to exist, the burden of proving fair dealing shifts to the fiduciary and must be established by clear and convincing evidence." The court then concluded as follows: "The plaintiff trusted the defendant with the operation of their business and relied upon him to run it legally. The parties were equal members of the limited liability corporation, but the defendant had sole control over the operation of the business for the first three years. The plaintiff did fairly have an expectation that the defendant would operate the business legally and the defendant breached this trust by operating the business in the manner that he did and continuing to do so once the plaintiff actively participated in the operation and raised her concerns over certain business practices to the defendant. By using an asset of the business, specifically the barter agreement to pay for home heating and dental bills, the defendant clearly misused a business asset for his personal benefit at the expense of the other [member] and breached the trust that he had as the managing member of the bar. The court finds that the plaintiff has met her burden of establishing a breach of fiduciary duty[1] by the defendant by his use of the barter exchange agreement and awards damages based on the misuse of this asset.[2] The plaintiff presented other evidence of damages but the court does not find that the plaintiff met her burden of proof with respect to those claims. The defendant has failed to establish fair dealing by clear and convincing evidence. Therefore, the court finds for the plaintiff and against the defendant on count one, alleging a breach of fiduciary duty."

The plaintiff asserts that the court, in determining that "[t]he plaintiff presented other evidence of damages but [that] . . . the plaintiff [did not meet] her burden of proof with respect to those claims," improperly imposed on her the burden of proving that the defendant breached his fiduciary duty to the plaintiff with respect to his handling of the LLC revenues. The plaintiff argues that once she established that the defendant owed a fiduciary duty to her, the court should have allocated the burden of proving fair dealing to the defendant. See, e.g., *Murphy* v. *Wakelee*, 247 Conn. 396, 400, 721 A.2d 1181 (1998).

We observe the following legal principles governing breach of fiduciary duty actions. "Once a [fiduciary] relationship is found to exist, the burden of proving fair dealing properly shifts to the fiduciary. . . . Furthermore, the standard of proof for establishing fair dealing is not the ordinary standard of fair preponderance of the evidence, but requires proof either by clear and convincing evidence, clear and satisfactory evidence or clear, convincing and unequivocal evidence. . . . Proof of a fiduciary relationship, therefore, generally imposes a twofold burden on the fiduciary. First, the burden of proof shifts to the fiduciary; and second, the standard of proof is clear and convincing evidence."

(Citation omitted; internal quotation marks omitted.) Id. "Such burden shifting occurs in cases involving claims of fraud, self-dealing or conflict of interest." (Internal quotation marks omitted.) *Heaven* v. *Timber Hill, LLC*, 96 Conn. App. 294, 303, 900 A.2d 560 (2006).

Our Supreme Court has applied the preceding burden shifting framework to partnership disputes involving breach of fiduciary duty allegations, which we view as analogous to the limited liability company context. See *Oakhill Associates* v. *D'Amato*, 228 Conn. 723, 726–27, 638 A.2d 31 (1994) (burden of proving fair dealing by clear and convincing evidence properly shifted to partner against whom allegation of self-dealing was made); *Konover Development Corp.* v. *Zeller*, 228 Conn. 206, 229–30, 635 A.2d 798 (1994) (burden of proving fair dealing properly shifts to fiduciary once fiduciary relationship is found to exist); see also *Martinelli* v. *Bridgeport Roman Catholic Diocesan Corp.*, 196 F.3d 409, 421 (2d Cir. 1999) ("To be sure, where the fiduciary has not received some kind of benefit that would engender suspicion and there is no other evidence of wrongdoing, the burden of proof remains on the plaintiff. . . . But Connecticut law routinely shifts the burden of proof, irrespective of circumstances, where a fiduciary appears to have obtained a benefit at the expense of a person to whom it owes a fiduciary duty." [Citation omitted.]).

We must now determine whether the court erred in applying the foregoing burden shifting framework. "When a party contests the burden of proof applied by the court, the standard of review is de novo because the matter is a question of law." (Internal quotation marks omitted.) *Rollar Construction & Demolition, Inc.* v. *Granite Rock Associates, LLC*, 94 Conn. App. 125, 133, 891 A.2d 133 (2006). As previously stated, for purposes of this appeal, we assume, without deciding, that the plaintiff and the defendant owed fiduciary duties to one another by virtue of their membership interests in the LLC. See footnote 1 of this opinion. The plaintiff alleged in the operative complaint that the defendant misappropriated LLC revenues and engaged in fraudulent conduct by inaccurately reporting those revenues and expenses. The plaintiff then produced evidence, in the form of tax and accounting documents, as well as testimony from the plaintiff's accountant, appearing to support those allegations.[3] See part II of this opinion. There was also evidence adduced at trial suggesting that the defendant exerted control over those revenues and the accounting thereof. See 37 Am. Jur. 2d 487, Fraud and Deceit § 461 (2013) ("rule that fraud is not presumed . . . is relaxed or qualified in a case where a fiduciary or confidential relationship exists between the parties and where one has a dominant and controlling force or influence over the other" [footnote omitted]). The burden of proof with respect to the LLC revenues therefore properly shifted to the

defendant to prove fair dealing by clear and convincing evidence. The court erred by placing the burden of proof on the plaintiff with respect to her allegation that the defendant breached his fiduciary duty by misappropriating LLC revenues.

This does not end our inquiry, however, because "[g]enerally, a trial court's ruling will result in a new trial only if the ruling was both wrong *and* harmful." (Emphasis in original; internal quotation marks omitted.) *Wiseman* v. *Armstrong*, 295 Conn. 94, 106, 989 A.2d 1027 (2010).

On the basis of our review of the court's decision, we are not persuaded that the court would have reached the same decision had it applied the burden of proof correctly. The court's error was simply of such a fundamental nature that the only proper remedy is to reverse the judgment in part and remand the case for a new trial on the issue of whether the defendant breached his fiduciary duty to the plaintiff through his handling of the LLC's revenues.

II

Next, the LLC claims that the court erred by concluding that the defendant did not have the intent necessary to be found liable for statutory theft. We disagree.

"Statutory theft under [General Statutes] § 52-564 is synonymous with larceny under General Statutes § 53a-119. . . . Pursuant to § 53a-119, [a] person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or [withholds] such property from an owner. . . . Conversion can be distinguished from statutory theft as established by § 53a-119 in two ways. First, statutory theft requires an intent to deprive another of his property; second, conversion requires the owner to be harmed by a defendant's conduct. Therefore, statutory theft requires a plaintiff to prove the additional element of intent over and above what he or she must demonstrate to prove conversion." (Internal quotation marks omitted.) *Deming* v. *Nationwide Mutual Ins. Co.*, 279 Conn. 745, 771, 905 A.2d 623 (2006).

The court concluded as follows with regard to the statutory theft count: "The court finds the evidence presented by the plaintiffs is not sufficient to prove that the defendant had the requisite intent to deprive the LLC of its assets for his own personal appropriation and benefit. The defendant and the plaintiff were partners in a business with the plaintiff leaving almost all of the responsibility for the daily operations of the bar to the defendant. There was no evidence of a written operating agreement, only evidence of a contradictory verbal understanding between the parties. The defendant presented evidence that the understanding of the parties was that he would first be provided a salary from any

profits, to the extent there were any, since he was the only one actively involved in the business. The plaintiffs claim that the parties' intent was to share all profits equally, but they do not allege a claim to any profits from the period when the plaintiff was not actively working at the bar. Although clearly improper, the cash that the defendant took was not used for his own benefit, but to pay the employees of the bar and other expenses of the business. He also used the bar's asset, specifically the barter agreement, only when the bar would lose the value of its exchange if it went unused.

"The defendant admitted to his lack of business acumen and hired an accountant to ensure that the proper business accounting was kept and taxes were filed. The plaintiffs have not shown the requisite intent on the part of the defendant, and the court finds that the plaintiffs have not sustained their burden of proof to establish statutory theft. Therefore, the court finds for the defendant and against the LLC on count two, alleging statutory theft."

"[T]he question of intent is purely a question of fact. . . . Intent may be, and usually is, inferred from the defendant's verbal or physical conduct. . . . Intent may also be inferred from the surrounding circumstances. . . . The use of inferences based on circumstantial evidence is necessary because direct evidence of the [defendant's] state of mind is rarely available." (Internal quotation marks omitted.) *Fernwood Realty, LLC* v. *AeroCision, LLC*, 166 Conn. App. 345, 359, 141 A.3d 965, cert. denied, 323 Conn. 912, 149 A.3d 981 (2016). "[W]here the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous." (Internal quotation marks omitted.) Id., 356. "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed . . . ." (Internal quotation marks omitted.) Id., 369.

The court's finding that the defendant lacked the intent to commit theft under § 52-564 is not clearly erroneous. There was evidence presented at trial tending to show that, although the defendant had perhaps been sloppy in documenting the LLC's financials, he did not intend to deprive the LLC of its revenues for his personal benefit. The defendant was inexperienced in running a bar, a deficiency undoubtedly compounded by the fact that he bore the largely undivided responsibility of managing it.[4] In 2010, he hired an accountant to assist with the LLC's accounting and tax filing. Further, there was evidence that the defendant used the LLC's revenues to pay for the bar's expenses, including

employee wages.[5] This conduct does not amount to theft.[6]

As a final matter with respect to the LLC's revenues, we address an argument repeatedly pressed by the plaintiffs in their appellate brief. As previously mentioned, at trial, the plaintiff entered as exhibits certain tax and accounting documents completed on behalf of the LLC for the years 2010 to 2012. The LLC asserts that those documents show, more or less conclusively, that the defendant improperly took LLC revenues. We disagree.

The record discloses the following evidence relevant to this argument. Among the tax and accounting documents entered as exhibits was the LLC's 2010 balance sheet. Libby, the plaintiff's accountant, testified at trial that the balance sheet showed revenues of $782,000 and income of $51,000 for that year. The plaintiff then entered as an exhibit the LLC's 2010 state sales tax returns. Libby testified that, in comparison to the figures shown on the balance sheet, the sales tax returns "showed sales larger . . . by $46,426." The plaintiff also entered as an exhibit the LLC's 2010 state and federal income tax returns, which, Libby testified, showed the same figures as on the balance sheet. Asked by the plaintiffs' attorney whether "the income reported on the LLC tax return[s] is $46,426 less than the actual sales . . . on the sales tax return?" Libby answered "correct." After examining other accounting documents for the LLC for the year 2010, which were admitted as exhibits, Libby testified that there was "a total of $122,435 of expenses that were taken on the return[s] that were unsubstantiated."

The 2011 and 2012 tax and accounting documents entered as exhibits showed similar patterns. According to Libby, for 2011 there was a $185,142 difference between the LLC's revenues as reported on its balance sheet versus its sales tax returns, as well as $137,142 in unsubstantiated expenses. Libby testified that for 2012 the LLC had unsubstantiated expenses of $153,879.

Libby further testified that "[b]ased on the [restaurant] industry standards . . . it appeared that the cost of sales, the purchase of the liquor and the food . . . [was] well above the typical benchmark for a restaurant. . . . [T]ypically . . . a restaurant would have [30] to [45] percent of their costs . . . this restaurant in those years was about [50] percent on sales." Asked by the plaintiffs' counsel, "[A]pplying that formula to the numbers representing the revenues for the [LLC], how much of an increase in revenues would that indicate should be applied to those figures?" Libby answered, "Conservatively, could be [$75,000] to [$125,000] per year."

These documents, together with Libby's testimony, appear to suggest that the LLC underreported revenues on certain accounting documents and tax returns, and

that at least some of the LLC's expenses were unsubstantiated. We fail to see, however, how the documents necessarily lead to the conclusion that the defendant stole LLC revenues. The documents are equally consistent with another plausible scenario: that the operating agreement entitled the defendant to the LLC's profits; see footnote 6 of this opinion; and that he simply failed to record some of the bar's expenses. Accordingly, this argument fails.

As to the defendant's use of the barter program, the court's finding that the defendant's use of that program did not amount to statutory theft is not clearly erroneous. Again, the key question is whether the defendant had the specific intent to steal the LLC's property. See *Deming* v. *Nationwide Mutual Ins. Co.*, supra, 279 Conn. 771; see also D. Borden & L. Orland, 10 Connecticut Practice Series: Criminal Law (2d Ed. 2007) § 53a-119, p. 246 ("[larceny] is a specific intent crime; the state must prove that the defendant acted with the subjective desire or knowledge that his actions constituted stealing"). The defendant testified that participation in the barter program was intended, at least in part, to attract new patrons to the bar. The defendant did admit to using some value in the barter account to provide dental services to one of the bar's employees, but said that it was to "use . . . up" the value in the account. He also cast the provision of the dental services as a way to boost employee morale: "[H]appy employees make better employees. I tried to help her." While evidently poor business judgment—as previously mentioned, the court found that such conduct constituted a breach of fiduciary duty to the plaintiff—the defendant's use of the barter program in this manner did not necessarily demonstrate a specific intent to steal. See D. Borden & L. Orland, supra, § 53a-119, p. 246.

Finally, although the defendant did admit to using the barter program to have heating oil delivered to his house—a practice that, again, the court found constituted a breach of fiduciary duty, and which strikes us as more problematic than the practice relating to the dental services—we cannot conclude on the basis of the record that it necessarily evidences a specific intent to steal the LLC's property. If, for instance, the defendant merely took the oil in lieu of what would otherwise be distributed to him as salary, then, on balance, he did not deprive the LLC of its property. We are, therefore, not persuaded.

III

Both plaintiffs further claim that the court erred by concluding that an accounting was not warranted. We disagree.

"An accounting is defined as an adjustment of the accounts of the parties and a rendering of a judgment for

the balance ascertained to be due." (Internal quotation marks omitted.) *Mankert* v. *Elmatco Products, Inc.*, 84 Conn. App. 456, 460, 854 A.2d 766, cert. denied, 271 Conn. 925, 859 A.2d 580 (2004). "In any judgment or decree for an accounting, the court shall determine the terms and principles upon which such accounting shall be had." General Statutes § 52-401.

"Courts of equity have original jurisdiction to state and settle accounts, or to compel an accounting, where a fiduciary relationship exists between the parties and the defendant has a duty to render an account." (Internal quotation marks omitted.) *Mankert v. Elmatco Products, Inc.*, supra, 84 Conn. App. 460. "In an equitable proceeding, the trial court may examine all relevant factors to ensure that complete justice is done . . . . The determination of what equity requires in a particular case, the balancing of the equities, is [therefore] a matter for the discretion of the trial court." (Internal quotation marks omitted.) Id., 459. "An accounting is not available in an action where the amount due is readily ascertainable." (Internal quotation marks omitted.) Id., 460.

Both the plaintiff in her individual capacity and the LLC sought to compel the accounting. The court concluded, on the basis of *Internet Airport Parking, LLC* v. *Parking Access, LLC*, Superior Court, judicial district of Hartford, Docket No. CV-13-6044395-S (December 5, 2013) (57 Conn. L. Rptr. 265), that the plaintiff did not have standing in her individual capacity to compel an accounting because she had not "suffered any injury distinct from the one suffered by the LLC." The plaintiff does not appear to challenge this conclusion on appeal, nor, even if she did, is the issue adequately briefed. Accordingly, we do not review the merits of the court's determination that the plaintiff lacked standing in her individual capacity to compel an accounting. See *State* v. *Henderson*, 47 Conn. App. 542, 558–59, 706 A.2d 480, cert. denied, 244 Conn. 908, 713 A.2d 829 (1998).

As to the LLC's request that the defendant account for the allegedly misappropriated revenues, the court concluded: "[T]he plaintiffs have not provided sufficient evidence on behalf of the LLC for the court to order an accounting of Central Cafe's business and financial records for the period from 2010 through 2012. The plaintiffs only had one meeting with their accountant and never asked for documentation from the defendant though they raised questions about operations, and the plaintiff was fully aware of and engaged in some of the complained of practices, specifically the payment of employees in cash." As to the defendant's use of the barter program, the court concluded: "[T]he plaintiff obtained the records related to the agreement and the loss was ascertainable."

The LLC's claim consists of little more than a conclusory statement that the court's decision declining to

order an accounting was an abuse of discretion. We conclude that the court properly exercised its discretion. "The right to accounting is not absolute, but should be accorded only on equitable principles." 1A C.J.S. 9, Accounting § 7 (2005). "While certain circumstances must be present, there is no guideline for determining when an accounting is warranted, and the court will consider the particular circumstances of each case." (Footnotes omitted.) Id., § 6, p. 8. The court evidently believed that the plaintiff had not shown a genuine need for an accounting based on her implicit acquiescence to the defendant's conduct at the time. The record bears this out. There was evidence presented at trial that the plaintiff engaged in, or at least tolerated, some of the very practices to which she objects. The plaintiff faults the defendant for paying employees "off the books," yet she testified to having done exactly the same. The plaintiff stated: "I didn't like it, but the employees, if they didn't get paid, they wouldn't work there and we would not have a business, and I was following [the defendant's] direction." The plaintiff also objects to the defendant's admittedly slapdash method of managing the LLC's revenues and paying for expenses, yet she appears to have been a participant in such methods, testifying that "[the defendant] gave [her] cash out of [the box in which the revenues were stored] to purchase food and stuff for banquets and for parties at the bar . . . ." Further, the plaintiff did not demand documentation from the defendant relating to the LLC's financials until, at the earliest, 2010—nearly four years after the purchase of the bar. As for the bartering agreement, the plaintiffs had records pertaining to the defendant's use of it, and therefore any loss was ascertainable. See *Mankert v. Elmatco Products, Inc.*, supra, 84 Conn. App. 460.

The LLC nevertheless asserts that an accounting should be ordered on the basis of "[General Statutes §] 34-144 (e), [which] requires the defendant to hold as trustee 'any profit or benefit' obtained by him as manager of the LLC property." Section 34-144 (e), however, says no such thing. Instead, it is General Statutes § 34-141 (e) that provides in part: "Unless otherwise provided in writing in the articles of organization or the operating agreement, every member and manager must account to the limited liability company and hold as trustee for it any profit or benefit derived by that person . . . ." The court did not address the applicability of this particular provision to the facts of this case, most likely because the plaintiffs' complaint never cites § 34-141 (e).[7] It is not the trial court's responsibility to search the General Statutes for theories upon which a litigant may obtain relief but which the litigant does not adequately identify. Nor are we required to address the merits of an argument that was not properly raised before or addressed by the trial court. See *Jahn* v. *Board of Education*, 152 Conn. App. 652, 665, 99 A.3d 1230

(2014). We therefore decline to review the merits of this particular argument.

## IV

Finally, the plaintiffs claim that the court erred by concluding that the defendant's conduct did not violate CUTPA. We disagree.

General Statutes § 42-110b (a) provides: "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." "It is well settled that in determining whether a practice violates CUTPA we have adopted the criteria set out in the cigarette rule by the [F]ederal [T]rade [C]ommission for determining when a practice is unfair: (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise . . . (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers, [competitors or other businesspersons]. . . . All three criteria do not need to be satisfied to support a finding of unfairness." (Internal quotation marks omitted.) *Naples* v. *Keystone Building & Development Corp.*, 295 Conn. 214, 227, 990 A.2d 326 (2010).

In concluding that the defendant's conduct did not violate CUTPA, the court reasoned: "The plaintiffs have presented evidence of negligence, poor judgment, and inexperience. The plaintiffs rely on the evidence presented to support their claim for breach of fiduciary duty, but the evidence presented in this claim is not sufficient to rise to the level of conduct prohibited under CUTPA." Although we also question whether the present dispute is a mere "intracorporate conflict," and therefore not actionable under CUTPA; see *Metcoff* v. *Lebovics*, 123 Conn. App. 512, 519, 2 A.3d 942 (2010); the court's stated rationale is sufficient basis for affirmance.

"It is well settled that whether a defendant's acts constitute . . . deceptive or unfair trade practices under CUTPA, is a question of fact for the trier, to which, on appellate review, we accord our customary deference." (Internal quotation marks omitted.) *Ulbrich* v. *Groth*, 310 Conn. 375, 433–34, 78 A.3d 76 (2013). Additionally, "[i]n the absence of aggravating unscrupulous conduct, mere incompetence does not by itself mandate a trial court to find a CUTPA violation." *Naples* v. *Keystone Building & Development Corp.*, supra, 295 Conn. 229.

The court found that the defendant's conduct was merely negligent, and therefore did not rise to a violation of CUTPA. This finding is adequately supported by the evidence adduced at trial. See part II of this opinion. Accordingly, we reject this claim.

The judgment is reversed in part and the case is

remanded for a new trial with respect to the plaintiff's allegation in count one that the defendant breached his fiduciary duty to her by allegedly misappropriating LLC revenues. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.

* April 25, 2017, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] The defendant has not participated in this appeal and, therefore, does not challenge the court's finding, not reproduced in this opinion, that a fiduciary relationship existed between the plaintiff and the defendant by virtue of their membership in the LLC. For purposes of this appeal, we therefore assume, without deciding, that such relationship existed.

[2] As previously mentioned, the court awarded the plaintiff damages of $10,191.25 for misuse of the barter agreement. Those damages reflected value in the bar's barter account that the defendant used to have heating oil delivered to his house and to provide one of the bar's employees with dental services.

[3] We express no opinion as to whether the defendant's conduct with respect to the LLC's revenues actually constituted fraud or a breach of fiduciary duty.

[4] The damages that the plaintiff recites in this claim appear to be limited to those revenues that the defendant allegedly improperly took from 2010 to 2012. The evidence shows that, by 2010, the plaintiff had begun working regularly at the bar, but from that time until 2012, it appears that the defendant still shouldered the majority, if not all, of the managerial responsibilities.

[5] The fact that the defendant paid some employees "off the books" for a period of time—a practice that, it should be noted, the plaintiff also engaged in; see part III of this opinion—does not, in and of itself, constitute theft of LLC revenues.

[6] To the extent that the LLC claims that the defendant's disposition of the bar's *profits*—that is, revenues less expenses—evidences an intent to steal, we conclude that the plaintiff was unable to show that the defendant improperly took those profits. As previously mentioned in the body of this opinion, there was no written operating agreement for the LLC, only what appears to be an oral one. See generally General Statutes § 34-101 (17) (operating agreement can be written or oral). The plaintiff argued at trial that she and the defendant agreed to split the profits evenly, while the defendant maintained that the two agreed that he would take the profits, if any, as his salary in exchange for managing the bar. The court did not explicitly credit one party's account over the other's. Nevertheless, because the burden of proving statutory theft belonged to the plaintiff, it was her responsibility to show that the defendant took profits properly belonging to her. In light of all of the evidence, the court reasonably could have concluded that she failed to make such showing.

General Statutes § 34-152, which provides in part that profits "shall be allocated on the basis of the value of the contributions made by each member," does not alter our conclusion. Such allocation pursuant to § 34-152 occurs only when the operating agreement is silent as to the division of profits. By contrast, in this case, there was evidence of an oral operating agreement whose terms allocated the profits in a certain way. The parties simply dispute what those terms were.

[7] Although the plaintiffs, in their complaint, recite a portion of the *language* of General Statutes § 34-141 (e), they incorrectly cite it as General Statutes *§ 34-142 (c)*. General Statutes § 34-142 (c) does not exist, and § 34-142 has no relevance to the duty of a member of a limited liability company to account for or hold as trustee property of the limited liability company.