******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

McDONALD, J., with whom ECKER, J., joins, concurring. I agree with part I of the majority opinion, in which the majority determines that the trial court correctly concluded, under the current framework set forth in General Statutes § 54-1o, that the state established by a preponderance of the evidence that the defendant's statement was both voluntary and reliable and, therefore, admissible, despite the remarkable failure of the police to preserve the recording of the defendant's custodial interrogation. I write separately to emphasize that § 54-1o is ostensibly intended to provide meaningful protections for individuals who are suspected of serious criminal conduct when the police fail to record their custodial interrogation by making statements made during such interrogations presumptively inadmissible at any future trial. In reality, however, § 54-1o provides largely illusory protections insofar as the state is able to overcome the presumption of inadmissibility by a mere preponderance of the evidence and will often rely on the testimony of the very law enforcement officials who failed to record the custodial interrogation to overcome the presumption of inadmissibility. If I correctly understand the legislature's objective in passing the statute, it should address the reality that a "presumption" that can be scuttled by a quantum of evidence no greater than a "preponderance of the evidence" is effectively no presumption at all. General Statutes § 54-1o (h). In my view, if the legislature intended for § 54-1o to provide meaningful protections for individuals being interrogated by law enforcement, while at the same time providing procedural consequences for law enforcement's failure (whether intentional, reckless or negligent) to record these crucial interviews, the legislature should consider amending § 54-1o to provide more meaningful protections to those individuals. The legislature could do so by simply requiring a heightened standard of proof—clear and convincing evidence—to overcome the presumption of inadmissibility, particularly if the evidence of reliability is being offered by the very law enforcement personnel who failed to conform their own conduct to the statutory mandate of recording the interrogation so that the substance of the questions and the manner in which they were being asked, as well as the individual's responses, would be preserved for later review by the state, defense counsel and the fact finder at any trial. Additionally, the legislature may wish to consider requiring ameliorative measures when the state overcomes the presumption of inadmissibility, including a jury instruction that would alert the jury to the fact that the police did not comply with the recording mandate of the statute or, as in this case, that the police recorded the interrogation and then destroyed that recording by recording over it.

I agree with parts II and III of the majority opinion. Accordingly, I respectfully concur. I begin with this state's recording statute, § 54-1o. Section 54-1o provides that, if a person suspected of having committed one of several enumerated classes of serious felonies gives a statement to law enforcement as a result of a custodial interrogation at a detention facility, the statement will be presumed to be inadmissible unless officers make an audiovisual recording of the interrogation. See General Statutes § 54-1o (b). Under subsection (h) of the statute, the state may overcome the presumption of inadmissibility in any case by proving, by a preponderance of the evidence, that the statement "was voluntarily given and is reliable, based on the totality of the circumstances." General Statutes § 54-1o (h).

The legislative history of § 54-1o reveals that the legislature was concerned with involuntary and untrustworthy confessions, and that it considered the recording requirement in § 54-1o to be an important step toward ensuring the reliability of confessions. See 54 H.R. Proc., Pt. 28, 2011 Sess., p. 9481, remarks of Representative Gary Holder-Winfield ("[M]ost false confessions stemming from an interrogation . . . come from the fact that there may be some intimidation, threats or coercion. This [b]ill seeks to put in place [an audiovisual] recording of the interrogation such that we can capture and see whether . . . those threats, coercions or intimidations happen[ed]."); see also 54 S. Proc., Pt. 16, 2011 Sess., pp. 5111–12, remarks of Senator Eric D. Coleman ("[S]ome of the flaws and shortcomings in our criminal justice system have to do with . . . the voluntariness and the validity of statements and confessions of [an] accused [which] oftentimes is suspect and has come into question. I believe that the bill before us would be a significant step in [the] direction of . . . contributing to a greater reliance [on] the confessions of individuals who are involved in custodial interrogation. . . . I believe that the recording of custodial interrogations will not only help the accused but, in fact, [when] those confessions and those statements are valid, the recording of them will serve as significant evidence of that fact.").

This court similarly has emphasized the importance of recording custodial interrogations. For example, in his concurrence in *State* v. *Lockhart*, 298 Conn. 537, 4 A.3d 1176 (2010), Justice Palmer explained that we have become increasingly aware that false confessions, despite being counterintuitive, occur with some regularity; see id., 590–91 (*Palmer, J.*, concurring); and that "a recording requirement would dramatically reduce the number of wrongful convictions due to false confessions . . . ." Id., 595 (*Palmer, J.*, concurring). Moreover, this court recently has stated that "[s]uch recordings enable the fact finder to view the circumstances of the interrogation for himself or herself and provide strong evidence to determine both the voluntariness and reliability of

a defendant's statement." *State* v. *Christopher S.*, 338 Conn. 255, 282 n.9, 257 A.3d 912 (2021).

To encourage compliance with the recording requirement, § 54-1o (b) creates a presumption of inadmissibility when law enforcement fails to comply with the provisions of the statute. As we have explained, "[t]he presumption of inadmissibility under § 54-1o is designed to encourage the police to record custodial interrogations by creating a consequence for their failure to do so. As we noted in *State* v. *Lockhart*, supra, 298 Conn. 537, one of the benefits of recording is to avoid the 'swearing contests' between law enforcement and defendants regarding what happened in the interrogation room. . . . Id., 566. When officers fail to record, we return to that paradigm." *State* v. *Christopher S.*, supra, 338 Conn. 290.

Section 54-1o (h), however, makes the failure to record custodial interrogations little more than an inconvenience for the state because the presumption of inadmissibility may be overcome if the state can demonstrate, by a mere preponderance of the evidence, that the statement was voluntary and reliable.[1] Indeed, during a public hearing on the bill, a representative of the Connecticut Criminal Defense Lawyers Association expressed concern that subsection (h) of § 54-1o is "problematic because it seems to be a subsection on which prosecutors could easily rely to gain admittance of a statement that has not been recorded." Conn. Joint Standing Committee Hearings, Judiciary, Pt. 7, 2011 Sess., p. 1964. Similarly, Representative David A. Baram remarked that the statute "indicates that evidence is presumed to be inadmissible unless it is video recorded, and then [subsection (h)] overcomes that presumption by a preponderance of the evidence . . . ." Conn. Joint Standing Committee Hearings, Judiciary, Pt. 6, 2011 Sess., p. 1794. He went on to ask the following question: "[W]ould anything really change if a police department for lack of training . . . [or] lack of funds decided to rely on established methods of interrogation *without the video recording* [it] could . . . choose to do [so] and that [the recording requirement] *really isn't the mandate that is being projected on individual police departments*?" (Emphasis added.) Id., 1794–95.

The present case illustrates the problem with the recording statute. Following their arrest, the defendant, Adrian Flores, and Benjamin Bellavance were transported to the police station and placed in individual cells around 11:30 p.m. At approximately 3:20 a.m., the police began to question the defendant, and he went on to make certain inculpatory statements. During the hearing on the defendant's motion to suppress, the defendant testified that "his English was not very good" and that he was under the influence of alcohol, cocaine, and Percocet during the interrogation. Moreover, he "claimed that he was confused, cold, tired, and scared

when questioned by the police." The trial court found the defendant not to be credible. In concluding that the defendant's statement was voluntary and reliable, the court did, however, find credible the testimony of the law enforcement officers who interrogated the defendant. Thus, the testimony of the very law enforcement officials who interrogated the defendant, but failed to preserve the recording of that interrogation, was used to overcome the presumed inadmissibility of the defendant's statement.[2]

One way in which the legislature could provide more meaningful consequences for the failure to record custodial interrogations would be to require a heightened standard of proof from the state to overcome the presumption of inadmissibility. "Increasing the burden of proof is one way to impress the [fact finder] with the importance of the decision . . . ." (Internal quotation marks omitted.) *Santosky* v. *Kramer*, 455 U.S. 745, 764–65, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982). As we have explained, "[t]he clear and convincing standard of proof is substantially greater than the usual civil standard of a preponderance of the evidence, but less than the highest legal standard of proof beyond a reasonable doubt." *Miller* v. *Commissioner of Correction*, 242 Conn. 745, 794, 700 A.2d 1108 (1997). Implementing the intermediate level, clear and convincing standard to overcome the presumption of inadmissibility would help to ensure that the unrecorded statement is truly voluntarily given and reliable. See id., 795 ("the clear and convincing evidence standard should operate as a weighty caution [on] the minds of all judges, and it forbids relief whenever the evidence is loose, equivocal or contradictory" (internal quotation marks omitted)).

The United States Supreme Court has required "an intermediate standard of proof—clear and convincing evidence—when the individual interests at stake in a state proceeding are both particularly important and more substantial than mere loss of money." (Emphasis omitted; internal quotation marks omitted.) *Fish* v. *Fish*, 285 Conn. 24, 70, 939 A.2d 1040 (2008). Connecticut law implements the clear and convincing standard in a variety of contexts, including those that involve only monetary disputes. See, e.g., *Goldstar Medical Services, Inc.* v. *Dept. of Social Services*, 288 Conn. 790, 819, 955 A.2d 15 (2008) (clear and convincing standard is appropriate standard in common-law fraud cases); *Notopoulos* v. *Statewide Grievance Committee*, 277 Conn. 218, 226, 890 A.2d 509 (clear and convincing standard is applicable when determining whether attorney violated Rules of Professional Conduct), cert. denied, 549 U.S. 823, 127 S. Ct. 157, 166 L. Ed. 2d 39 (2006); *Black* v. *Goodwin, Loomis & Britton, Inc.*, 239 Conn. 144, 163–64, 681 A.2d 293 (1996) (clear and convincing evidence standard of proof is required to establish collusion); *Papallo* v. *Lefebvre*, 172 Conn. App. 746, 754, 161 A.3d 603 (2017) (clear and convincing standard

of proof is required to establish fiduciary fair dealing). It seems apparent that ensuring the reliability and voluntariness of an unrecorded statement, given in a custodial interrogation by an individual suspected of having committed a very serious felony and potentially facing decades in prison, is weightier than any context involving a monetary dispute.

Several states require a showing by clear and convincing evidence, either in the context of an exception to the recording requirement or to prove the voluntariness of an unrecorded confession. See, e.g., Cal. Penal Code § 859.5 (d) (Deering Supp. 2021) ("[a] person's statements that were not electronically recorded pursuant to this section may be admitted into evidence in a criminal proceeding or in a juvenile court proceeding, as applicable, if the court finds that all of the following apply . . . (2) [t]he prosecution has proven by clear and convincing evidence that the statements were made voluntarily"); D.C. Code § 5-116.03 (2019) ("Any statement of a person accused of a criminal offense in the Superior Court of the District of Columbia that is obtained in violation of [the recording statute] shall be subject to the rebuttable presumption that it is involuntary. This presumption may be overcome if the prosecution proves by clear and convincing evidence that the statement was voluntarily given."); N.C. Gen. Stat. § 15A-211 (e) (2019) ("If the court finds that the defendant was subjected to a custodial interrogation that was not electronically recorded in its entirety, any statements made by the defendant after that non-electronically recorded custodial interrogation, even if made during an interrogation that is otherwise in compliance with this section, may be questioned with regard to the voluntariness and reliability of the statement. The State may establish through clear and convincing evidence that the statement was both voluntary and reliable and that law enforcement officers had good cause for failing to electronically record the interrogation in its entirety."); Ind. R. Evid. 617 (a) ("[i]n a felony criminal prosecution, evidence of a statement made by a person during a Custodial Interrogation in a Place of Detention shall not be admitted against the person unless an Electronic Recording of the statement was made, preserved, and is available at trial, except upon clear and convincing proof of any one of the following [exceptions]").

Another way in which the legislature could provide more meaningful consequences for the failure to record custodial interrogations would be to require a jury instruction that would alert the jury to the fact that the police did not comply with the recording mandate of the statute. For example, state recording statutes in Michigan, Nebraska, New York, North Carolina, and Wisconsin provide for a jury instruction requirement when the police fail to record certain custodial interrogations. See Mich. Comp. Laws Serv. § 763.9 (LexisNexis 2016) ("the jury shall be instructed that it is the

law of this state to record statements of an individual in custodial detention who is under interrogation for a major felony and that the jury may consider the absence of a recording in evaluating the evidence relating to the individual's statement"); Neb. Rev. Stat. § 29-4504 (2016) ("if a law enforcement officer fails to comply with [the recording statute], a court shall instruct the jury that they may draw an adverse inference for the law enforcement officer's failure to comply with such [statute]"); N.Y. Crim. Proc. Law § 60.45 (3) (d) (McKinney 2019) ("upon request of the defendant, the court must instruct the jury that the people's failure to record the defendant's confession, admission or other statement as required . . . may be weighed as a factor, but not as the sole factor, in determining whether such confession, admission or other statement was voluntarily made, or was made at all"); N.C. Gen. Stat. § 15A-211 (f) (3) (2019) ("[w]hen evidence of compliance or noncompliance with the requirements of this section has been presented at trial, the jury shall be instructed that it may consider credible evidence of compliance or noncompliance to determine whether the defendant's statement was voluntary and reliable"); Wis. Stat. Ann. § 972.115 (2) (a) (West 2007) ("upon a request made by the defendant . . . and unless the state asserts and the court finds that [certain conditions apply] or that good cause exists for not providing an instruction, the court shall instruct the jury that it is the policy of this state to make an audio or audio and visual recording of a custodial interrogation of a person suspected of committing a felony and that the jury may consider the absence of an audio or audio and visual recording of the interrogation in evaluating the evidence relating to the interrogation and the statement in the case").

New Jersey and Massachusetts also require jury instructions when the police fail to follow laws requiring that custodial interrogations be recorded. New Jersey's electronic recordation law provides that "[t]he failure to electronically record a defendant's custodial interrogation in a place of detention shall be a factor for consideration by the trial court in determining the admissibility of a statement, and by the jury in determining whether the statement was made, and if so, what weight, if any, to give to the statement." N.J. Court Rules 3:17 (d); see *State* v. *Hubbard*, 222 N.J. 249, 263, 118 A.3d 314 (2015) ("[f]ollowing a comprehensive study of 'whether and how to implement the benefits of recording electronically part, or all, of custodial interrogations,' *State* v. *Cook*, 179 N.J. 533, 561, 847 A.2d 530 (2004), the [c]ourt adopted [r]ule 3:17 in 2005"). Subsection (e) of rule 3:17 provides in relevant part that, "[i]n the absence of an electronic recordation . . . the court shall, upon request of the defendant, provide the jury with a cautionary instruction." N.J. Court Rules 3:17 (e). "[A] report issued by the New Jersey Supreme Court Special Committee on Recordation of Custodial Interrogations

in 2005 recommended an instruction that the jury has 'not been provided with a complete picture of all of the facts surrounding the defendant's alleged statement and the precise details of that statement.' " *State* v. *Lockhart*, supra, 298 Conn. 564 n.11. Similarly, the Massachusetts Supreme Judicial Court has explained that a defendant is "entitled ([upon] request) to a jury instruction advising that the [s]tate's highest court has expressed a preference that [custodial] interrogations be recorded whenever practicable, and cautioning the jury that, because of the absence of any recording of the interrogation in the case before [it], [it] should weigh evidence of the defendant's alleged statement with great caution and care." *Commonwealth* v. *DiGiambattista*, 442 Mass. 423, 447–48, 813 N.E.2d 516 (2004).

In situations such as that in the present case, in which law enforcement failed to preserve the recording of the custodial interrogation; see General Statutes § 54-1o (c); it may well be appropriate for the trial court to provide an adverse inference instruction similar to the one provided, in the civil context, for spoliation of evidence. See, e.g., *United States* v. *Johnson*, 996 F.3d 200, 216–17 (4th Cir. 2021) ("[w]e observe . . . that if on remand the [trial] court rejects the defendants' due process claim [premised on the government's failure to preserve evidence] again and conducts a retrial, the court should assess anew whether the defendants are entitled to an adverse inference instruction"); *People* v. *Grovner*, 206 App. Div. 3d 1638, 1641, 168 N.Y.S.3d 606 (2022) (given that exculpatory value of video that law enforcement failed to preserve was speculative, trial court did not abuse its discretion in providing permissive adverse inference instruction); see also, e.g., *Mills* v. *District of Columbia*, 259 A.3d 750, 762 (D.C. 2021) ("[w]hen a trial court determines that the government has . . . fail[ed] to preserve discoverable evidence, the court has discretion to select from [an] extremely broad range of sanctions for corrective action that is just under the circumstances" (internal quotation marks omitted)). Of course, a criminal defendant would also be free to raise a due process challenge based on the state's failure to preserve evidence that may be useful to him. See, e.g., *State* v. *Morales*, 232 Conn. 707, 719–20, 657 A.2d 585 (1995).

If I understand the legislature's objective correctly, I urge it to consider whether to amend § 54-1o to provide more meaningful safeguards in situations in which law enforcement fails to record custodial interrogations. Without more meaningful safeguards, the statute provides little realistic protection. Notwithstanding my concerns with the statutory scheme, as I have articulated them, I am fully in agreement with the majority that, in this case, the trial court correctly concluded, under the current framework set forth in § 54-1o, that the state established, by a preponderance of the evidence, that the defendant's statement was both volun-

tary and reliable and, therefore, admissible, despite the failure of the police to preserve the recording of the defendant's custodial interrogation.

For the foregoing reasons, I respectfully concur.

[1] This is not the only perceived deficiency that this court has encountered in cases involving § 54-1o. Pursuant to the statute, a custodial interrogation is required to be recorded only when it occurs at a "place of detention . . . ." General Statutes § 54-1o (b). Subsection (a) (4) defines "place of detention" as "a police station or barracks, courthouse, correctional facility, community correctional center or detention facility . . . ." General Statutes § 54-1o (a) (4). Such a cramped understanding of "place of detention" fails to account for situations in which law enforcement engages in custodial interrogations in other coercive environments that may raise the same concerns as custodial interrogations in police stations, courthouses, or correctional facilities. For example, in *State* v. *Tony M.*, 332 Conn. 810, 213 A.3d 1128 (2019), the police interrogated the defendant in his hospital room while he was physically restrained to his hospital bed. See id., 818 and n.4, 826–27. Certainly, this, and other situations, including interrogations in police vehicles or other places where the individual is not free to leave, raise similar concerns regarding the possibility of intimidation, threats or coercion during the interrogation that the recording requirement is meant to guard against. Section 54-1o, however, provides no protections in these situations.

[2] I do not mean to suggest that I question the trial court's factual findings or legal conclusions that the state proved, by a preponderance of the evidence, that the defendant's statement was voluntarily given and reliable. I merely highlight the fact that, when the police fail to record, or preserve a recording of, a custodial interrogation, in violation of § 54-1o, it is often testimony from the very law enforcement officials who failed to comply with the provisions of § 54-1o that is used to overcome the presumption of inadmissibility. In other words, because there is no recording of the custodial interrogation, we are back to the "swearing contests" between law enforcement and defendants. (Internal quotation marks omitted.) *State* v. *Lockhart*, supra, 298 Conn. 566. It cannot be seriously doubted that law enforcement usually prevails in these contests. As a result, the presumption of inadmissibility under § 54-1o provides little incentive for law enforcement to record custodial interrogations or consequences for not having done so.